# Plaintiff's Response to Defendants' Appendix A

**Plaintiff's Response to Defendants' Appendix A ("Def. App'x A")[1]**

I.    **Statements as to Which Defendants Concede Falsity Was Adequately Plead**

| | Misstatement(s) | AC, ¶ [2] | Plaintiff's Response |
|---|---|---|---|
| **A.** | **Financial Results** | | |
| 1. | Defendants reported revenue and related financial metrics for the years ended December 31, 2021 and 2020, as well as Quarterly Reports for 2022 and 2021, which were materially misstated in violation of GAAP due to errors in Edgio's accounting treatment of Edgio's Open Edge arrangements. | 62-63, 67-68, 72-73, 81, 87, 91, 94, 98, 105, 109-110, 114, 118, 120 | The reasons these statements were materially false and misleading are set forth in AC, ¶¶25-30, 66, 71, 76, 90, 97, 108, 117, 126.  The foregoing allegations plausibly allege falsity consistent with Fed. R. Civ. P. 9(b) and the PSLRA for the reasons stated at Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint ("P. Opp."), §I.A.  Defs. App'x A at 52-57 does not dispute that these statements were "False and Misleading." |

II.    **Statements as to Which Defendants Claim the AC Lacks Plausible Allegations of Falsity**

| | Misstatement(s) | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
| **A.** | **Internal Control Statements and SOX Certifications** | | |
| 1. | Defendants falsely stated that:<br><br>• Based on their knowledge, Edgio's Forms 10-K and 10-Q filed with the SEC during the Class Period did not contain | 64, 69, 74, 88, 95, 106, 115, 121, 141 | The reasons these statements were materially false and misleading are set forth in AC, ¶¶31, 66, 71, 76, 90, 97, 108, 117, 126.   The foregoing allegations |

---

[1]    This chart addresses Defendants' arguments that Plaintiff has failed to plausibly allege falsity and/or that the alleged false and misleading statements are not actionable as a matter of law.  Scienter and loss causation are not addressed herein.

[2]    "AC, ¶" denotes the paragraph in the Amended Complaint for Violations of the Federal Securities Laws, ECF No. 32 ("AC") in which the statements appear.

| | Misstatement(s) | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
| | any untrue statement of a material fact or omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which the statements were made, not misleading. <br><br> • Based on their knowledge, the financial statements, and other financial information in the Forms 10-K and 10-Q filed with the SEC during the Class Period, fairly presented in all material respects the financial condition, results of operations, and cash flows of Edgio for the periods presented. <br><br> • Edgio designed and maintained disclosure controls and procedures and internal controls over the financial reporting process ("ICFR") to ensure that material information relating to the Company was made known to them and to provide reasonable assurance regarding the reliability of Edgio's financial reporting and the preparation of financial statements for external purposes in accordance with GAAP. | | plausibly allege falsity consistent with Fed. R. Civ. P. 9(b) and the PSLRA for the reasons stated at P. Opp., §I.A. |
| 2. | Defendants falsely and misleadingly certified that Edgio's financial results complied with the requirements of Section 13(a) and 15(d) of the Securities Exchange Act of 1934 and that the information contained therein fairly represented, in all material respects, Edgio's financial condition and results of operations. | 65, 70, 75, 89, 96, 107, 116, 122 | The reasons these statements were materially false and misleading are set forth in AC, ¶¶31, 66, 71, 76, 90, 97, 108, 117, 126. The foregoing allegations plausibly alleged falsity consistent with Fed. R. Civ. P. 9(b) and the PSLRA for the reasons stated at P. Opp., §I.A. |
| 3. | Defendants signed Form 10-Qs (Boncel and Cummings) and Form 10-Ks (Lyons and Boncel) that contained the materially false and misleading financial results. | 63, 68, 73, 87, 94, 105, 114, 120 (*see also* 25-31, 133-41) | The reasons these statements were materially false and misleading are set forth in AC, ¶¶25-31, 66, 71, 76, 90, 97, 108, 117, 126, 133-41. The foregoing |

|   | Misstatement(s) | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
|   |   |   | allegations plausibly alleged falsity consistent with Fed. R. Civ. P. 9(b) and the PSLRA for the reasons stated at P. Opp., §I.A. |
| **B.** | **Sales, Sales Force and Pipeline Misstatements** | | |
| 1. | Defendants falsely and/or misleadingly stated that Edgio's sales of Layer0's AppOps solution were strong and the pipeline was growing when, in fact, interest in the product was virtually non-existent and sales were weak.<br><br>Examples of such statements include:<br><br>• On August 24, 2021, Defendant Lyons told investors that Edgio had already experienced a "150% growth in [its] pipeline in the last 6 months" (AC, ¶77);<br><br>• On November 4, 2021, Edgio reported, and Lyons repeated on the earnings call, "[s]trong pipeline growth with new logo bookings up more than 3x quarter over quarter" (*Id.*, ¶¶81, 82), Boncel stated that "existing products [were] seeing traction" (*Id.*, ¶84), and in response to an analyst question, Lyons affirmed that Edgio's success "in terms of new pipeline" was driven by Layer0, a "very hot and desirable" product, which was "growing pretty rapidly (*Id.*, ¶85);<br><br>• On January 20, 2022, Defendants touted the "growing pipeline for the Company's AppOps solutions" (*Id.*, ¶92) and the "momentum of [Edgio's] business" citing the growth and diversity of the Company's pipeline as "leading indicators" of this momentum (*Id.*, ¶93); | 77-78, 82-85, 92-93, 99, 101, 103-04, 109, 112, 118, 123-125, | The reasons these statements were materially false and misleading are set forth in AC, ¶¶32-60, 80, 90, 97, 108, 117, 126. The foregoing allegations plausibly allege falsity consistent with Fed. R. Civ. P. 9(b) and the PSLRA for the reasons stated at P. Opp., §I.A. |

| Misstatement(s) | AC, ¶ | Plaintiff's Response |
|---|---|---|
| • On April 28, 2022, Edgio announced, and Lyons repeated on the earnings call, that there was growth of more than 30% in Edgio's pipeline from the beginning of the year, with the Layer0 pipeline growing by triple digits, cited "[c]ustomer additions [that] were the highest they have been in the previous five quarters" as evidence of positive momentum in Edgio's AppOps solutions, touted Edgio's ability to convert the pipeline into sales more quickly than its CDN business due to developers' eagerness to work with Layer0, and stated that Edgio was "on plan . . . where [it] expected to be in bookings to support [projected growth]" (*Id.*, ¶¶99, 101, 103-04); | | |
| • On August 8, 2022, Lyons stated that Edgio's "clients [we]re doing more with [the Company]" and that "[s]econd-quarter 2022 revenue was ahead of plan" (*Id.*, ¶109), that Edgio's pipeline "continued to grow, [and was] already up 50% th[at] year and [was] heavily focused on [Edgio's] high-margin, high-growth AppOps opportunities," "the AppOps pipeline [was] actually up triple digits," and Edgio "slightly beat [its] bookings against plan" and "bookings [were] tracking where [the Company] expected to track" (*Id.*, ¶112); and | | |
| • On November 9, 2022, Edgio reported that its "[s]ales pipeline grew 75% from the beginning of the year" with the AppOps pipeline growing much faster, "bookings of [Edgio's AppOps] solutions [in Q3] were [Edgio's] highest to date," Edgio was "seeing the traction on sales and bookings that [it] expected to | | |

| | Misstatement(s) | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
| | see," and the "fundamentals of [the] business were strong" (*Id.*, ¶¶118, 123-25). | | |
| 2. | Defendants falsely and/or misleadingly stated that Edgio's sales force was experienced, well trained and effective.<br><br>Examples of such statements include:<br><br>• On August 24, 2021, Boncel attributed growth in the pipeline to "the sales force replenishing th[e] pipeline," and that the sales force had been tasked with "doubl[ing] their pipeline by the end of the year (*Id.*, ¶77), and Eric Armstrong, Edgio's Chief Growth Officer, stated that the sales staff for AppOps was going to triple over the next three quarters and focus on enterprise and mid-market companies that had a "6-month sales cycle" (*Id.*, ¶78), and that new hires would have "existing relationships" in the CDN space and an understanding of the "market, the competition, the alternatives," and touted Edgio's plans "[to] bring [salespeople up] to speed faster with better training, better content" (*Id.*, ¶79);<br><br>• On November 4, 2021, Lyons stated that Edgio had accelerated hiring because it "had the opportunity to get more quality salespeople" and "decided to take advantage" (*Id.*, ¶85); and (iii) on January 20, 2022, Defendant Lyons touted "the caliber of new salespeople [Edgio had] been able to attract" and Edgio's "ability to attract top talent" (*Id.*, ¶93). | 77-79, 85, 93 | The reasons these statements were materially false and misleading are set forth in AC, ¶¶32-60, 80, 90, 97, 108, 117, 126. The foregoing allegations plausibly allege falsity consistent with Fed. R. Civ. P. 9(b) and the PSLRA for the reasons stated at P. Opp., §I.A. |

## III.        Statements Defendants Claim Are Forward-Looking

| | Misstatement(s)[3] | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
| A. | The PSLRA's Safe Harbor Does Not Apply as the Statement Is Not Forward-Looking | | |
| 1. | Defendants falsely and/or misleadingly described Edgio's "pipeline" growth as favorable or strong (*e.g.*, "150% growth in [Edgio's] pipeline in the last 6 months") (*Id.*, ¶77) and touted the "momentum of the business," claiming the growth and diversity of Edgio's pipeline as "leading indicators" of that momentum (*Id.*, ¶93). | 77, 82, 93, | The statements are not forward-looking because they concern past/existing business conditions and pipeline growth and the purported reasons for it. *See* P. Opp., §I.B. |
| 2. | Boncel stated that the Company was "accelerating investments in rebuilding its sales team" because "existing products were seeing traction and new products were to be launched over the next few months" (*Id.*, ¶84). | 84 | The statement is not forward-looking because it describes what the Company is currently doing with respect to expanding its sales force and the reasons why. *See* P. Opp., §I.B. |
| 3. | In response to an analyst's question about the "ideal resume of all sales reps," Armstrong indicated that the "time to get up to speed on either solution with the training materials was not very long," and that ideally candidates would have "existing relationships" in the media space, "some CDN experience" as well as an understanding of the "market, the competition, the alternatives" (*Id.*, ¶79). Lyons promised "a steady stream of new and improved product announcements," and touted "the caliber of new salespeople Edgio had been able to attract in the last few months," citing this "ability to attract top talent" as permitting the Company to "accelerate the expansion of its commercial growth capacity" (*Id.*, ¶93) | 79, 93 | The statements are not forward-looking because they refer to past/existing business conditions and the present qualifications and available training of sales personnel. *See* P. Opp., §I.B. |

---

[3]      The quotes in this Section III are as quoted in Defendants' Appendix A.

| | Misstatement(s)[3] | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
| 4. | Defendants falsely and/or misleadingly described Layer0's AppOpps solution as "best-in-class" (*Id.*, ¶81). | 81 | The statement is not forward-looking because it refers to the completed launch of Layer0 and the present quality and desirability of the product. *See* P., Opp. §I.B. |
| 5. | Defendants falsely and/or misleadingly described the "fundamentals" of Edgio's business as strong and stated that they "remain[ed] bullish on Edgio's transformation story and in our ability to drive long-term value creation for our shareholders" (*Id.*, ¶125). | 125 | The statements are not forward-looking because they refer to the present strength of Edgio's business. *See* P. Opp., §I.B. |
| **B.** | **The Statement Is Forward-Looking, but Is Nonetheless Misleading** | | |
| 1. | Defendants made a number of statements that were forward-looking but still false and/or misleading.  For example:<br><br>• On November 4, 2021, Defendants provided guidance for FY2021 (*Id.*, ¶¶81, 84) and Lyons stated that when enabled with the Company's network, Edgio's new security and developer solutions "positioned [Edgio] to be a compelling competitor in the multibillion dollar App Ops market" (*Id.*, ¶83);<br><br>• On January 20, 2022, Defendants provided guidance for FY 2022 as detailed at *Id.*, ¶91;<br><br>• On August 8, 2022, Defendants provided FY 2022 guidance (*Id.*, ¶110) and an "initial outlook" for 2023 (*Id.*, ¶111), and Boncel stated that he "expected gross margins and adjusted EBITDA to continually improve throughout 2022 and 2023 as the Company realized the benefit of planned synergies, increased utilization and diversified revenue mix" (*Id.*, ¶113); and | 81, 83-84, 91, 110-11, 113 | The statements are forward-looking but are not protected by the PSLRA's safe harbor because: (i) the guidance was accompanied by and premised on false and misleading statements about Edgio's current pipeline; and (ii) Defendants either knew the forward-looking statements were false and misleading when made or the forward-looking statements were not accompanied by meaningful cautionary language. *See* P. Opp., §II.B. |

| | Misstatement(s)[3] | AC, ¶ | Plaintiff's Response |
|---|---|---|---|
| | • On November 9, 2022, CFO Stephen Cumming was quoted as stating that in light of the then-current macro environment and "some churn across a group of smaller Edgecast customers," Edgio "expected a more measured top line in Q4" of (i) revenue between $109 million and $114 million; and (ii) an adjusted EBITDA range of a loss of $8 million to a loss of $6 million, implying an adjusted EBITDA margin between -7.5% and -5.5% (*Id.*, ¶119). | | |
| **C.** | **The Statement Is Mixed and Partially Subject to PSLRA Safe Harbor, However the Forward-Looking Portion of the Mixed Statement Is Still Misleading** | | |
| 1. | Defendants made a number of mixed statements containing both forward-looking (but still false/misleading, and therefore not protected by the PSLRA safe harbor) and non-forward-looking (not subject to the PSLRA safe harbor) components. For example:<br><br>• On August 24, 2021, Armstrong stated that by "rapidly expanding the sales force" and selling "all solutions . . . globally starting in Q4 2021," Edgio expected to grab the "low-hanging fruit for application orchestration" from its "existing hundreds of . . . customers that were deployed for content delivery" thereby growing "new logos in application orchestration by over 10% next year" (*Id.*, ¶78).<br><br>• On November 4, 2021: (i) in response to an analyst's question about the new solutions being launched in November and December, Lyons agreed that since these were upgrades of what the Company was already doing with existing customers, Defendants were "expecting the upsell . . . to be fairly quick in terms of its success," adding that "the leading indicators that the Company was seeing | 78, 83, 92-93, 103 | The statements are mixed statements containing non-forward-looking components. The non-forward-looking portions of these statements are not protected by the PSLRA's safe harbor. *See* P. Opp., §I.B. In addition, the forward-looking portions of the statements are not protected by the PSLRA's safe harbor because: (i) the guidance was accompanied by and premised on false and misleading statements about Edgio's current pipeline; and (ii) Defendants either knew the forward-looking statements were false and misleading when made or the forward-looking statements were not accompanied by meaningful cautionary language. *See* P. Opp., §II.B. |

| Misstatement(s)[3] | AC, ¶ | Plaintiff's Response |
|---|---|---|
| with client conversations and pipeline growth all supports that thesis;" and (ii) Boncel stated that the Company was "accelerating investments in rebuilding its sales team" because "existing products were seeing traction and new products were to be launched over the next few months" (*Id.*, ¶¶83-84).<br><br>• The January 20, 2022 earnings release touted the following as providing continued momentum for Q1 and FY 2022: (i) the expected completion of sales hiring goals by Q1 2022, a quarter ahead of plan; (ii) a growing pipeline for the Company's AppOps solutions; (iii) the launch of the Layer0 web application, Edgio's flagship product for the AppOps segment, and the GraphQL caching and serverless host functionality for Layer0; and (iv) the intended launch of Edgio's security offerings in a few weeks (*Id.*, ¶92). In addition, Defendant Lyons touted the "momentum of the business," and the growth and diversity in the Company's pipeline as "leading indicators" of this momentum (*Id.*, ¶93).<br><br>• On April 28, 2022: (i) Lyons stated that with the planned rebuild of Edgio's sales and marketing teams now largely completed, "the second quarter would be the first full quarter for most of the Company's quota-carrying reps, providing ample opportunity for continued momentum in the second half of the year" (*Id.*, ¶102), and (ii) Boncel stated "[a]s we built out that sales force, that pipeline and the demand gen capabilities that we have in place, that triple-digit growth in pipeline gives us confidence that we will convert that. And the conversion time period on those types of deals is a little bit quicker than the historical or | | |

| Misstatement(s)[3] | AC, ¶ | Plaintiff's Response |
|---|---|---|
| legacy CDN business, which you have to run through a trial process and get through the procurement piece versus the Layer0, which we believe is a best-in-class product that developers are really looking forward to working with as quickly as possible given the productivity and efficiency improvements that that product has. And so, I think just the shortening of the conversion time line into actual revenue gives us that confidence. And the fact that we've only had the sales force and demand gen team in place for a really short period of time. And to see that growth in the pipeline is something that's very exciting for us. . ." (*Id.*, ¶103). | | |

## IV.    Statements Defendants Claim Are Puffery

| | Misstatement(s) | AC ¶ | Plaintiff's Response |
|---|---|---|---|
| 1. | Defendants falsely and misleadingly described (i) their revenue as "record," (ii) the launch of Layer0 as a "success," (iii) new client wins as "diverse," (iv) the caliber and talent of Edgio's sales force as "top," (v) Edgio's "upside opportunities" in application orchestration, and (vi) Layer0's AppOps solution as "best-in-class." | 62, 78-79, 81-83, 85-86, 92-93, 102-103 113, 123, 125 | Such statements are capable of objective verification and would be meaningful to investors. *See* P. Opp., §I.B. |
| 2. | Defendants falsely and misleadingly stated they were seeing "traction" on new products, sales and bookings and positive "momentum" in the business. | 83-85, 92-93, 98, 99, 112, 118, 123-125 | Such statements are actionable since they are tethered to specific financial metrics or facets of Edgio's business. *See* P. Opp., §I.B. |
| 3. | Defendants falsely and misleadingly described the strength of Edgio's pipeline and bookings. | 82-83, 85, 92-93, 101-104, 112, 118, 123, 124 | Such statements are actionable for the reasons stated at P. Opp., §I.B. n.9. |