David B. Rosenbaum, 009819
Joseph N. Roth, 025725
OSBORN MALEDON, P.A.
2929 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 640-9000
drosenbaum@omlaw.com
jroth@omlaw.com

Scott B. Luftglass (*pro hac vice*)
Michael P. Sternheim (*pro hac vice*)
FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 859-8000
scott.luftglass@friedfrank.com
michael.sternheim@friedfrank.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Mehran Esfandiari, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Robert Lyons, Daniel Boncel, and Stephen Cumming,<br><br>Defendants. | No. 2:23-cv-00691-DJH<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.      THE SCIENTER ALLEGATIONS ARE GENERAL AND INSUFFICIENT. ................................................................................................. 2

     A.      The Complaint Contains No Particularized Allegations of Scienter. ..................................................................................................... 2

     B.      The "Core Operations" Doctrine Does Not Cure Plaintiff's Problem. ................................................................................................... 6

II.     THE COMPLAINT FAILS TO ADEQUATELY PLEAD FALSITY. ................... 7

     A.      Many of Plaintiff's Claims Are Based on Statements that Are Inactionable as a Matter of Law. ................................................................ 8

          1.      Plaintiff Cannot Base His Claim on Forward-Looking Statements. ...................................................................................... 8

          2.      Many of the Alleged Misstatements are Inactionable "Puffery". ......................................................................................... 9

     B.      Plaintiff Does Not Plausibly Allege Falsity for His Other Claims. ............ 11

          1.      The Complaint Fails to Allege Falsity as to the SOX Certifications. ........................................................................... 11

          2.      The Sales and Pipeline Allegations Are Not False or Misleading. ..................................................................................... 12

III.    PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION. ............................................................................................... 13

CONCLUSION ..................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Backe v. Novatel Wireless, Inc.*,
  642 F. Supp. 2d 1169 (S.D. Cal. 2009)................................................................11

*Batwin v. Occam Networks, Inc.*,
  No. 07-CV-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008)................................5

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) ..................................................................10

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ....................................................................1, 13, 14

*City of Dearborn Heights Act 345 Police & Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 ........................................................................................................7, 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................10

*Commc'n Workers of Am. Plan for Emps.' Pensions & Death Benefits v. CSK Auto Corp.*,
  525 F. Supp. 2d 1116 (D. Ariz. 2007) ....................................................................2

*In re Countrywide Financial Corp.*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008) ..............................................................4, 6

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ............................................................................9, 10

*E. Ohman J:Or Fonder AB v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023) ..................................................................................3

*Farhar v. Ontrak, Inc.*,
  No. 21-CV-01987, 2024 WL 1136128 (C.D. Cal. Feb. 2, 2024) ..........................10

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
  501 F. Supp. 3d 735 (N.D. Cal. 2020) ..................................................................15

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ..................................................................................2

*In re Invision Techs., Inc. Sec. Litig.*,
  No. 04-CV-03181, 2006 WL 538752 (N.D. Cal. Jan. 24, 2006)............................11

*Kui Zhu v. Taronis Techs. Inc.*,
No. 19-CV-4529, 2020 WL 1703680 (D. Ariz. Apr. 8, 2020) ...............................................2, 3

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ..............................................................................................10

*In re Mattel, Inc. Sec. Litig.*,
No. 19-CV-10860, 2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) .............................................5

*In re Medicis Pharm.*,
689 F. Supp. 2d 1192 (D. Ariz. 2009) ....................................................................................5

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................................11, 12, 13

*In re Miller Energy Res. Sec. Litig.*,
No. 11-CV-386, 2014 WL 415730 (E.D. Tenn. Feb. 4, 2014) .................................................12

*Mineworkers Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ................................................................................................13

*Mulligan v. Impax Laboratories, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ...................................................................................6, 7

*In re Nektar Therapeutics Sec. Litig.*,
34 F. 4th 828 (9th Cir. 2022) ...............................................................................................14

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
730 F.3d 1111 (9th Cir. 2013) ..............................................................................................14

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ..............................................................................................9, 10

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................................................15

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .............................................................................................8, 10

*Rehm v. Eagle Financial Corp.*,
954 F. Supp. 1246 (N.D. Ill. 1997) .........................................................................................3

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) .............................................................................................9, 10

*In re Retek Inc. Sec. Litig.*,
621 F. Supp. 2d 690 (D. Minn. 2009)....................................................................................15

*Robb v. Fitbit*,
No. 16-CV-151, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017)......................................................4

*Ross v. Career Educ. Corp.*,
No. 12-CV-76, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) ....................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................................................1

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) .....................................................................................10

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ...................................................................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................................ *passim*

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)..........................................................................................................2

**Other Authorities**

Rule 9(b) .......................................................................................................................................7

**PRELIMINARY STATEMENT**

Plaintiff's Complaint does not come close to meeting the PSLRA's[1] heightened pleading standards, which "unequivocally raise the bar for [securities fraud] pleading." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 317 (2007). To try to show scienter, Plaintiff relies entirely on general allegations and fails to plead particularized facts creating a "strong inference" that any Defendant acted with scienter. Instead of pleading facts, he repeats conclusory allegations from CWs with no ties to the Individual Defendants and who never allege that they shared any disputed information with the Individual Defendants. Plaintiff brushes aside the relevant standards for pleading scienter, suggesting (incorrectly) that the lack of particularized facts can be overcome with bulk. But the Ninth Circuit has rejected just that logic, and this deficiency alone justifies dismissal.

Additionally, as Defendants' Motion explained, many of the statements upon which Plaintiff bases his claim are not actionable because he pleads no facts showing that the statements were false or misleading, and because the statements themselves are inactionable as a matter of law. The Opposition[2] provides no answer and, indeed, underscores these points. For example, the Opposition merely asserts, without precedential support, that statements calling a product launch a "success" and relating to the quality of personnel are capable of "objective verification." Courts regularly dismiss securities fraud claims based on those types of statements.

The Complaint also fails to adequately plead loss causation tied to new information released in two alleged "corrective disclosures" that form the basis of Plaintiff's claims. Although the Opposition tries to disclaim any obligation to allege the specific nature of the corrections made by a disclosure, the Ninth Circuit requires specific allegations. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).

The Opposition makes clear that Plaintiff's claims are subject to multiple

---

[1] Capitalized terms shall have the meanings ascribed to them in Defendants' Motion to Dismiss the Amended Complaint ("Motion" or "Mot.," Dkt. No. 37).

[2] Dkt. No. 38 ("Opposition" or "Opp.").

1

deficiencies, and the Complaint should be dismissed in its entirety.

**ARGUMENT**

**I.      THE SCIENTER ALLEGATIONS ARE GENERAL AND INSUFFICIENT.**

The PSLRA imposes an "exacting" standard that requires Plaintiff to "state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). The Complaint is far from meeting this standard.

**A.      The Complaint Contains No Particularized Allegations of Scienter.**

As explained in the Motion, Plaintiff fails to plead particularized facts showing that a Defendant knew or was deliberately reckless in not knowing that any alleged statement was false or misleading, as the PSLRA requires. *Zucco*, 552 F.3d at 991; Mot. 7-8. Rather than, for example, alleging that any Defendant received concrete facts contradicting their statements, Plaintiff relies on general allegations such as that the Individual Defendants "were the most senior management of Edgio," and conclusory assertions that the Individual Defendants acted "knowingly and/or recklessly." Mot. 7-9. Such allegations do not suffice. *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (refusing to infer CEO's scienter where plaintiff relied on allegations about his corporate role and did not plead "any facts to demonstrate that [he] was personally aware of . . . or . . . actively involved in the details of [the alleged wrongdoing]").

The Opposition seeks to side-step the PSLRA's requirement by reciting allegations tied to the purported CWs. But none of the CWs' allegations provides the type of facts that can justify a "strong inference" of scienter on any Defendant's part, such as showing that the Individual Defendants were aware of specific reports that contradicted their statements, *Kui Zhu v. Taronis Techs. Inc.*, No. 19-CV-4529, 2020 WL 1703680, at *4 (D. Ariz. Apr. 8, 2020), or that they "suppressed accounting related inquiries within the company, 'discourag[ing] employees from raising accounting related concerns,'" *Commc'n Workers of Am. Plan for Emps.' Pensions & Death Benefits v. CSK Auto Corp.*, 525 F. Supp. 2d 1116, 1122, 1124 (D. Ariz. 2007). That is not surprising given that ***none of the ten CWs***

*claims to have directly reported to, interacted with, or even spoken with any of the Individual Defendants*.  Opp. 16.

Plaintiff claims the CW allegations "indicat[e] that Defendants and other members of Edgio's senior management had access" to the information that contradicts public statements.  Opp. 17.  But none of those allegations ties to the alleged personal knowledge of the CWs.  Instead, at most, the CWs claim that non-defendant employees (at times multiple roles removed from the Individual Defendants) had access to certain disputed information.  That is not nearly enough.[3]  The PSLRA requires allegations that Defendants received specific information contradicting the statements that Plaintiff claims were misleading.[4]  *Kui Zhu*, 2020 WL 1703680, at *5.  "[G]eneralized claims [from witnesses]

---

[3] Plaintiff's cited cases are inapposite.  In *Ross v. Career Educ. Corp.*, No. 12-CV-76, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012), a CW alleged that the defendants had a practice of improperly inflating job placement statistics and that "*everyone at [the company], including [the individual defendant] was informed directly* of problems regarding [the company's] placement rates but nevertheless made contrary representations." *Id.* at *9 (emphasis added).  The plaintiff there also alleged facts showing that the individual defendant had actual notice of compliance problems, and that he resigned immediately before the results of an investigation were announced. *See id.* at *9–10.  Here, the Complaint contains no allegation that the Individual Defendants had actual notice of any conflicting information pertaining to Layer0.  Plaintiff also cites *Rehm v. Eagle Financial Corp.*, 954 F. Supp. 1246, 1256 (N.D. Ill. 1997), a nearly 30-year-old out-of-Circuit decision, for the proposition that "[t]he more serious the error, the less believable are defendants' protests that they were completely unaware."  Opp. 18.  However, the alleged error there was an understatement of "the amount of credit loss reserves *by 300%*." *Rehm*, 954 F. Supp. at 1253 (emphasis added).  Nothing comparable is alleged here.

[4] In his Opposition, Plaintiff introduces new allegations outside the four corners of the Complaint by citing to the August 2021 Strategy Session, Dkt. No. 37-3, and claiming that Lyons "admitted" that unnamed Edgio leadership reviewed key performance indicators on a regular basis.  Opp. 16.  That Plaintiff had to go outside the Complaint highlights the Complaint's deficiency on this front.  But regardless, the general statements that employees, including Lyons, would review unspecified key performance metrics fails to link any of those metrics with the subject matter of the alleged false statements.  The Ninth Circuit's decision in *E. Ohman J:Or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023), underscores this.  There, the Ninth Circuit held that scienter allegations sufficed where the individual defendant stated, among other things, "that he carefully monitored NVIDIA's sales data," that his strategy "is to stay very, very close to the market," and, in interviews,

---

3

about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state." *Zucco*, 552 F.3d at 998.

Plaintiff cites to *In re Countrywide Financial Corp.*, 554 F. Supp. 2d 1044, 1060-61 (C.D. Cal. 2008) for the proposition that it is not necessary for CWs to have interacted with or have personal knowledge relating to Defendants. Opp. 16. But, unlike here, the plaintiff in *Countrywide* had alleged other facts supporting a "strong inference" of scienter, including that concerns about deviations from loan underwriting standards had been conveyed to one of the individual defendants, and that the defendants "were members of at least one of five Board Committees that was specifically tasked with monitoring detailed aspects of the Company's financial performance, business operations, and risk exposure[]." 554 F. Supp. 2d at 1060-61. The plaintiffs alleged that while on the committees, the defendants became aware of "two red flags" pertaining to loan quality, specifically "the massive rise in negative amortization . . . and the increasing delinquencies in [the company's] riskiest loans," that were "of such prominence that Individual Defendants must necessarily have examined and considered them in the course of their Committee oversight duties." *Id.* at 1060. No similar allegation concerning the Individual Defendants exists here. Likewise, in *Robb v. Fitbit*, "connect[ing] the dots" between a witness's knowledge and the individual defendants was not required because the heart monitoring products that were the subject of the alleged misstatements "constituted 80% of [the company's] revenue stream" such that it "would also have been known to the individual defendants." No. 16-CV-151, 2017 WL 219673, at *6 (N.D. Cal. Jan. 19, 2017). Plaintiff does not allege that Layer0 was a central or core part of Edgio's overall business nor do they allege any revenue associated with Layer0.

---

"showed himself to be familiar with specific revenue numbers attributable to particular categories of sales," each of which was the subject matter of the complaint. *Id.* at 939–40. A CW also alleged that he personally met with the individual defendant "on a regular basis," *id.* at 940, and that the defendant "personally reviewed" the disputed sales data through the database, *id.* at 939. No such allegations exist here.

4

Plaintiff also argues that "Edgio's admission that its misstated revenues and related metrics . . . 'support at least some degree of scienter.'" Opp. 19 (quoting *In re Mattel, Inc. Sec. Litig.*, No. 19-CV-10860, 2021 WL 1259405, at *7 (C.D. Cal. Jan. 26, 2021)). Plaintiff misreads *Mattel*. Contrary to the out-of-context snippet Plaintiff quotes, *Mattel* found "*some* degree of scienter" not simply because of an accounting restatement but because the company publicly attributed internal control deficiencies to "lapses in judgment," had not resolved the deficiencies for more than twenty months and had received a whistleblower letter alerting them to the relevant accounting errors. *Id*. at *7. The court further noted that the company had concealed GAAP violations and that the deficiencies "were obvious well before receipt of the whistleblower letter." *Id.* No such allegations— e.g., that a Defendant had notice of the purported GAAP errors meaningfully in advance of the restatement—exist here. Thus, unlike the allegations in *Mattel*, the allegations here fail under the clear law establishing that "mere publication of a restatement," even a large one, "is not enough to create a strong inference of the scienter." *Zucco*, 552 F.3d at 1000; *see also In re Medicis Pharm.*, 689 F. Supp. 2d 1192, 1203 (D. Ariz. 2009) (allegations of GAAP violations that "are significant or require large or multiple restatements" do not suffice to establish scienter (internal quotation marks and citation omitted)).

Plaintiff's reliance on *Batwin v. Occam Networks, Inc.,* No. 07-CV-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008), is inapposite for the same reason. In *Batwin*, the company allegedly engaged in "significant GAAP violations," including obvious errors such as prematurely recognizing revenue "from sales of products and services ***that were unavailable*** at the time the revenue was originally recognized" as well as "revenue for sales to value-added resellers where the resellers ***did not have the ability to pay*** [the company] for these sales." *Id.* at *12–13 (emphases added). The company also publicly acknowledged on several occasions that there had been "internal control deficiencies related to the failure to properly recognize revenue," yet despite its long-standing knowledge of the deficiencies, "made no genuine attempt to correct these deficiencies." *Id.* at *4 (quotation omitted). Far from Plaintiff's claim, the *Batwin* court did not find a strong

inference of scienter based solely on a 4% reduction in revenue.

Finally, although Plaintiff argues that the restatement somehow supports an inference of scienter with respect to certain Defendants' SOX certifications, Opp. 18-19, Plaintiff never explains how that is the case.[5]

### B.    The "Core Operations" Doctrine Does Not Cure Plaintiff's Problem.

The so-called "core operations" doctrine does not save the Complaint. Plaintiff's core-operations theory is that "Edgio's pivot to becoming a higher growth edge computing company was at the center of [its] turnaround strategy and sales of Layer0 were a key metric of that success." Opp. 18. As an initial matter, allegations pertaining to Edgio's company strategy do not relate to its restatement of GAAP revenues. Plaintiff's core operations theory could, at most, only apply to statements concerning the Company's strategy. In any event, as the cases Plaintiff cites make clear, Plaintiff does not allege facts showing that Layer0 was so core to Edgio's business that, even assuming the Complaint's allegations about Layer0's viability, the Individual Defendants can be presumed to have knowledge of facts that allegedly contradict their statements about the Company's performance overall.

*Countrywide*, cited by Plaintiff, concerned a mortgage originator and allegations that the company purportedly misled the public concerning its loan origination process, quality of its loans, and financial system—all facets plainly integral to the company's core loan origination business. *See* 554 F. Supp. 2d at 1066. Here, Edgio is a provider of content delivery network services, offering edge and cloud security services and cloud storage, while Layer0 is merely a new product joining a catalog of more than a dozen products. Likewise, *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014), concerned a pharmaceutical company "whose main business [was to] manufactur[e] pharmaceuticals for public consumption" and allegations of manufacturing and quality

---

[5] As officers of all public companies must make such certifications, holding that the signing of a SOX certification imparts scienter would "eviscerat[e] the pleading requirements for scienter set forth in the PSLRA." *Zucco*, 552 F.3d at 1004.

control problems. But the court in *Mulligan* also credited allegations concerning "the repeated Form 483s and the Warning Letter from the FDA," which are specifically intended "to inform 'top management' of 'significant objectionable conditions'" related to manufacturing and quality control. *Id.* The Complaint here, however, lacks any comparable allegations to warrant reliance on these cases and permit the application of the core operations doctrine.

* * * *

In sum, there are no allegations allowing the Court to draw a "strong inference," *i.e.*, an inference at least as compelling as a non-fraudulent inference that Defendants intentionally or recklessly misled the investing public. Rather, the more compelling inference from the alleged facts is that the accounting issue at the center of the Restatement Allegations concerned an arcane accounting methodology that even a Big Four accounting firm hired to audit Edgio's financials had missed for roughly three years. And, as to the Strategy Allegations, the far more compelling inference is that Defendants attempted to implement a strategy to turnaround a struggling company and were unable to achieve the results predicted for their new products. *See Zucco*, 552 F.3d at 1007 (finding that though "the allegations in this case are legion, . . . they are not as cogent or compelling as a plausible alternative inference" that "there was no specific intent to fabricate the accounting misstatements"). As Plaintiff has failed to establish a strong inference of scienter as required, the Complaint must be dismissed.

## II.     THE COMPLAINT FAILS TO ADEQUATELY PLEAD FALSITY.

To satisfy Rule 9(b) and the PSLRA, Plaintiff was required to allege particularized facts showing, among other things, the "reasons why the statement is misleading." *City of Dearborn Heights Act 345 Police & Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614 (9th Cir. 2017) (quoting 15 U.S.C. § 78u-4(b)(1)(B)). But the Complaint identifies only statements that are not false or misleading and are inactionable as a matter of law.

7

**A.    Many of Plaintiff's Claims Are Based on Statements that Are Inactionable as a Matter of Law.**

**1.    *Plaintiff Cannot Base His Claim on Forward-Looking Statements.***

As Plaintiff acknowledges, the PSLRA provides a "safe harbor" from liability for a statement "if it is forward-looking and either is accompanied by cautionary language or is made without actual knowledge that it is false or misleading." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1190 (9th Cir. 2021). Plaintiff even acknowledges that some alleged misstatements are forward-looking statements.[6] Plaintiff tries to escape the safe harbor by claiming the alleged misstatements should be treated as "mixed statements"—statements in which present and forward-looking statements are intermingled, thereby exempting it from safe harbor. Plaintiff is wrong.

The primary statement that Plaintiff identifies as a purported "mixed statement" is the statement that "Edgio's 'existing hundreds of customers . . . deployed for content delivery' were 'low-hanging fruit for application orchestration' that were 'ripe for [sales].'" Opp. 11 (quoting Mot. 14). The only statement of a present fact is that Edgio has "hundreds of customers" that were "deployed for content." But nowhere does Plaintiff allege that was false. Rather, Plaintiff attacks Edgio's future plan to target "low-hanging fruit" for sales. That plan is inherently forward-looking. *See* Ex. C at 24; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (rejecting the argument that a forward-looking statement is a mixed statement when placed "[i]n context" and dismissing the PSLRA action). And even if the complained-of statements describing certain customers as "low hanging fruit" and "ripe for sales" are not forward-looking, at a minimum, these constitute opinions that are only actionable if the speaker did not actually hold such opinions, which Plaintiff has not alleged. *See City of Dearborn*, 856 F.3d at 616 (holding that to plead an opinion statement is false, the plaintiff must allege that "the speaker did not hold the belief she professed" (quotation marks omitted)).

---

[6] *See* Pl. Response to Defs.' App'x A, Dkt. No. 38-1 at 7-8; Opp. 11.

Plaintiff also argues that the cautionary language accompanying the forward-looking statements was insufficient because it did not identify the specific risks that allegedly came about. Opp. 13. But cautionary language need not identify the specific risk upon which a claim is based to satisfy the safe harbor. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). In any event, Edgio did identify specific risks relating to some of the very issues that Plaintiff claims were not disclosed. For example, the Opposition asserts that Edgio did not disclose that "its internal controls were inadequate," or that its "financial statements were misstated," Opp. 13, but in fact, Edgio explicitly disclosed precisely that risk: "If we fail to maintain proper and effective internal controls or fail to implement our controls and procedures with respect to acquired or merged operations, our ability to produce accurate financial statements could be impaired, which could adversely affect our operating results, our ability to operate our business and investors' views of us." Dkt. No. 37-3 (2022 10-K), at 25; *id*. at 9–27 (identifying risks to the business, including that the Company "may not be able to achieve the growth rates in revenue that we . . . expect or have experienced in the past;" impact of the "hyper competitive dynamics" of the market and strengths of the Company's competitors, "which . . . may continue to adversely affect our revenue, gross margin and operating results"; that "[n]ew hires require significant training and . . . take a significant period of time before they achieve full productivity" and "[the Company] may be unable to hire or retain sufficient numbers of qualified individuals in the future in the markets where [the Company] do[es] business"; and that the Company's "market for [its] services is characterized by rapidly changing technology.").

**2.    *Many of the Alleged Misstatements are Inactionable "Puffery."***

Business puffery consists of "expressions of opinion, as opposed to knowingly false statements of fact," that "are inherently subjective [and] would not induce the reliance of a reasonable investor," and are not "capable of objective verification." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014); *see also Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th

Cir. 2017) (same). "[V]ague statements" of business puffery "are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098–99 (9th Cir. 2022) (quoting *Intuitive Surgical*, 759 F.3d at 1060). Despite these constraints, the Complaint points to statements with "characterizations [that] are not 'objectively verifiable.'" *Id.* at 1099 (quotation omitted).

To save his allegation, Plaintiff claims that some statements "are both capable of objective verification and would be meaningful to investors," particularly those concerning whether the launch of Layer0 was a "success," whether new client wins were "diverse," and about the caliber and abilities of Edgio's sales force. Opp. 14. But Plaintiff never explains how amorphous concepts like the "success" of a venture, the "diver[sity]" of a client base, and the quality of staff are capable of objective verification. That is not surprising; there is nothing ***objective*** about such nebulous concepts, as courts have routinely recognized in dismissing claims based on similar statements as inactionable puffery. *See Or. Pub.*, 774 F.3d at 606 ("track record" and "significant"); *Macomb Cnty.*, 39 F.4th at 1099 ("great growth market," "huge opportunity," "tremendous" and "great"); *Cutera*, 610 F.3d at 1111 ("good," "well-regarded").[7] And as corporate puffery, these statements reflect Defendants' opinions, which Plaintiff does not allege were insincerely held, further rendering them inactionable. At bottom, Plaintiff's response that such statements give rise to liability because they are "capable of objective verification and would be meaningful to investors," Opp. 14, is belied by logic and precedent alike.

---

[7] *See also Retail Wholesale*, 845 F.3d at 1276 ("we make ethical decisions"); *Intuitive Surgical*, 759 F.3d at 1060 ("good," "everything is clicking" and "very well"); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("momentum" and "out of the gates"); *Farhar v. Ontrak, Inc.*, No. 21-CV-01987, 2024 WL 1136128, *2 (C.D. Cal. Feb. 2, 2024) ("most robust level" and "new heights"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal. 2012) ("strong," "good," and "solid"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 805 (N.D. Cal. 2019) ("relentless focus," "priority," "strength," and "key principle").

**B.      Plaintiff Does Not Plausibly Allege Falsity for His Other Claims.**

Many of the alleged misstatements identified in the Complaint, including those on internal controls, SOX certifications, and the Company's strategy and pipeline, are unsupported by sufficient allegations that the statements were false or misleading, dooming any claims based thereupon. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).  Plaintiff's Opposition fails to meaningfully address the Complaint's lack of plausible allegations of falsity.  Rather, Plaintiff (1) cites irrelevant precedent to encourage the Court to accept the falsity allegations at face value, (2) asks the Court to apply an extremely narrow reading of SOX certifications' case law, and (3) states, without backup, that certain statements were false and misleading.  This is not enough.

**1.      *The Complaint Fails to Allege Falsity as to the SOX Certifications.***

To plead a PSLRA claim based on SOX certifications and statements concerning a company's internal controls, it is not enough to merely allege "disclosures indicat[ing] that [defendants'] controls were not adequate and had in fact failed;" rather, a plaintiff must plead facts that "'clearly contradict[]' the statements made by defendants," *i.e.*, that the defendants "evaluated the controls and concluded that they were effective." Mot. 18 (citing *Luna v. Marvell Tech. Grp. Ltd.*, No. 15-CV-5447, 2016 WL 5930655, at *13 (N.D. Cal. Oct. 12, 2016); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1182 (S.D. Cal. 2009)).[8]  In other words, to make a claim here, the Complaint was required to allege

---

[8] Plaintiff argues that *Backe* and *In re Invision Techs.* "are distinguishable because the SOX certifications made no representations about the specific control deficiencies alleged by the plaintiffs," whereas here, "the SOX certifications related to . . . the adequacy of Edgio's financial reporting controls."  Opp. 10.  This fails to grapple with the central issue: the key feature of the SOX certification is that the statement disclosed what was "**known by Defendants** at the time the statement was made" and there are no allegations that Defendants **knew** their statements were false when the statements were made. *In re Invision Techs., Inc. Sec. Litig.*, No. 04-CV-03181, 2006 WL 538752, at *6 (N.D. Cal. Jan. 24, 2006) (emphasis added); *see Backe*, 642 F. Supp. 2d at 1182 ("The [c]ourt concludes that [p]laintiff fails to plead with particularity how the identified SOX certifications signed by [defendant] were false or misleading concerning [the company's] internal controls and financial results.").  "Plaintiff['s] allegations do not in any way contradict this point." *In*

specific facts showing that the Defendants who made the SOX certifications, Lyons, Boncel, and later Cumming, either (i) did not evaluate Edgio's internal controls, or (ii) did not conclude they were effective.  The Complaint has no such allegations.

Rather than addressing the Complaint's failure to plead these facts, Plaintiff instead focuses on Defendants' *later* disclosure about certain deficiencies in the Company's internal controls.  Opp. 9.  But that is not sufficient.  A plaintiff must plead "specific facts" indicating why a statement was false *at the time it was made*.  *Metzler Inv.*, 540 F.3d at 1070; *see In re Miller Energy Res. Sec. Litig.*, No. 11-CV-386, 2014 WL 415730, at *16 (E.D. Tenn. Feb. 4, 2014) (cited by Plaintiffs) (holding that "defendant's assurances concerning its internal controls were false because of various *known* weaknesses").  Plaintiff does not even attempt to do that here.

### 2.    *The Sales and Pipeline Allegations Are Not False or Misleading.*

The Complaint purports to rely on several statements concerning the Company's strategy or sales figures, but there are no allegations that these specific statements are false or misleading.[9]  Mot. 19; *Metzler*, 540 F.3d at 1070 ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet th[e] [pleading] standard.").  Plaintiff's chief response simply repeats his conclusory assertions that the statements are false. Opp. 10-11.  But nowhere does Plaintiff allege, for example, that Edgio did not in fact secure the sales at issue, that it was not pursuing this strategy, or that it was not building its pipeline.  Mot. 19 & n.10.

Plaintiff essentially concedes that these statements are true by offering its secondary response:  statements "can be both *true* and misleading" and thus give rise to liability.  Opp. 10 n.7 (emphasis added).  But this concession makes clear that Plaintiff's vague allegations do not satisfy the PSLRA's demand for specificity, as made clear in the Ninth Circuit's *Metzler* decision.   There, a plaintiff alleged falsity regarding "inflate[d] enrollment

---

*re Invision Techs.*, 2006 WL 538752, at *6.  The same outcome—dismissal—is appropriate here.

[9] *See* Defs' App'x A, Dkt. No. 37-1, Nos. 1-5, 11-13, 16, 19, 25-27, 30, 32, 37-41.

figures"—the equivalent of sales or potential sales. *Metzler*, 540 F.3d at 1070. However, the court affirmed dismissal because the complaint's "explanation of how and why the statements were false is decidedly vague." *Id.* This Complaint fails for the same reason: it is unclear, at best, why a ***true*** statement regarding the successful negotiation of a sales agreement, a description of the company's long-term strategy, or a potential sale in the form of the sales pipeline is misleading in any way. *See id.* Plaintiff's say-so is not enough to show "the reason or reasons why the statement[s are] misleading." *Id*. at 1061 (quoting 15 U.S.C. § 78u-4(b)(1)).[10]

## III.    PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION.

Loss causation under the PSLRA requires a corrective disclosure, which "occurs when 'information correcting the misstatement or omission that is the basis for the action is disseminated to the market.'" *In re BofI Holding*, 977 F.3d at 790 (quoting 15 U.S.C. § 78u–4(e)(1)). As Defendants explained in the Motion, the Complaint fails to plead facts showing that the April 28, 2022, and November 9, 2022 releases were corrective disclosures, *i.e.*, that they revealed the "truth" of anything previously hidden. The Opposition effectively concedes this.

**April 28, 2022**. On April 28, 2022, Edgio disclosed a 6% year-over-year organic growth of sales. Plaintiff claims that this disclosure was corrective of prior statements regarding the "purported strong growth in the Company's sales pipeline," Am. Compl. ¶ 152, and "the demand for Layer0 and the strength of the pipeline," Opp. 20-21. But Plaintiff's arguments cannot be traced "back to the very facts about which the defendant [allegedly] lied." *Mineworkers Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). The data released on April 28 "merely integrated newly collected data . . . into

---

[10] Plaintiff groups these statements with those regarding "the quality of its sales force and customers' interest in Edgio's products" and whether Edgio's SDRs were effectively trained on and understood how to properly sell highly complex products. Opp. 11. However, this latter tranche of statements is properly evaluated as opinion or puffery; like those statements, "quality," the efficacy or degree of the sales team's training and knowledge, or the level of interest Layer0 garnered—absent a grading rubric or other objective metrics—is not objectively verifiable and is thus inactionable.

13

its reporting.  It did not correct or revise previous . . . data."[11]  *In re Nektar Therapeutics Sec. Litig.*, 34 F. 4th 828, 839 (9th Cir. 2022).  Indeed, Plaintiff acknowledges that the disclosed results were "ahead of expectations," and while Plaintiff points to an analyst's commentary that the Company's "pipeline build . . . has seemingly yet to materialize much," he ignores that same analyst's prediction for "more positive results" in the future.  Am. Compl. ¶ 129; *see* Opp. 21.  Nothing in the April 28 disclosures renders any alleged misstatement false or misleading, and therefore Plaintiff fails to plead loss causation.

**November 9, 2022**.  Plaintiff claims that the November 9 disclosure lowered the Company's guidance, which he contends could "plausibly" be "partially" due to "disappointing sales of Layer0."  Opp. 21.  According to Plaintiff, this reduced guidance purportedly corrects alleged misstatements related to the "strong demand and growing pipeline for Layer0."  *Id.*  Plaintiff then improbably concludes "[n]othing more is required."  *Id.*  That is plainly not the case:  a corrective disclosure must "reveal[] new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading" *and* the "misrepresentation [must be] one *substantial cause* of the investment's decline in value."  *BofI*, 977 F.3d at 790.  The November 9 disclosure does not reveal new facts that concern any of Plaintiff's pipeline or Layer0 allegations, nor does Plaintiff plausibly allege that any possible information concerning the pipeline or Layer0 was a "substantial cause" of the stock price drop.[12]

---

[11] While Plaintiff claims to distinguish *Nektar* (Opp. 21 n.19), he instead highlights its applicability to the facts alleged here.  Plaintiff's purported misstatements concern the strength of the Company's sales pipeline (like the allegedly manipulated data in Nektar's first drug trial), while the purported corrective disclosure concerns the Company's overall organic growth, of which the pipeline is only one factor (like the results of Nektar's second drug trial, which was "related" to the first drug trial but was a "different and more comprehensive test").  34 F.4th at 839.

[12] *Nuveen*, which was decided before *BofI* and concerned non-publicly traded securities, holds no different: while "[d]isclosure of the fraud is not a *sine qua non* of loss causation . . . [u]nder this theory, the plaintiff must show that it was the very facts about which the defendant lied which caused its injuries."  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013) (quotation omitted).

14

The decision in *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 772–73 (N.D. Cal. 2020) is instructive.  There, the alleged corrective disclosure "report[ed] 2018 preliminary selected financial results and 2019 revenue guidance" but did not disclose any of the purported reasons why prior statements were allegedly false such as "fraudulent conduct, off-label marketing, increased scrutiny from insurance companies, or the allegations of [a whistleblower] report."  *Id.* at 773.  Acknowledging that the plaintiffs had argued that the forecast represented a "sharp slowdown in sales . . . presumably due to insurance companies tightening approval guidelines [to address off-label marketing] and physicians [reacting] to Defendants' improper marketing tactics," the court held that the plaintiffs had "done little to substantiate this allegation," as the press release "itself offers no guidance as to the cause of the forecast, and Plaintiffs' allegations are little more than conjecture [with] no facts alleged in the SAC that support the allegations that the market understood the [press release] as a revelation of [defendant's] allegedly fraudulent conduct."  *Id*.  The same is true here, where the most Plaintiff even argues is that the reduction in guidance is "plausibly . . . partially" due to "disappointing results of Layer0."  Opp. 21; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392, 394 (9th Cir. 2010) (granting summary judgment on loss causation grounds for announcement of earnings miss tied to price drop because there was no evidence that "the market learned of and reacted to" the company's fraudulent practices in the announcement); *In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 702 (D. Minn. 2009) ("It is clear that the mere disclosure of disappointing earnings or reduced future guidance is not sufficient to reveal that prior financial statements contained misrepresentations.").

## CONCLUSION

For the foregoing reasons and those discussed in the Motion, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

DATED this 2nd day of April, 2025.

OSBORN MALEDON, P.A.


By  *s/ Joseph N. Roth*
    David B. Rosenbaum
    Joseph N. Roth
    2929 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012

FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP

    Scott B. Luftglass
    Michael P. Sternheim
    One New York Plaza
    New York, New York 10004

*Attorneys for Defendants*