**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mehran Esfandiari, et al., | No. CV-23-00691-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Edgio Incorporated, et al., | |
| Defendants. | |

Defendants Robert Lyons, Daniel Boncel, and Stephen Cumming ("Defendants")[1] have filed a Motion to Dismiss Lead Plaintiff Peter Frouws' ("Plaintiff") Amended Complaint ("FAC") (Doc. 32) under Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Doc. 55). The matter is fully briefed. (Docs. 56–57). The Court will deny Defendants Motion to Dismiss for the following reasons.

**I.   Background[2]**

Plaintiff has brought this action against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Act") on behalf of himself and a class of other similarly situated investors. (Doc. 32 at 1). Defendant Edgio provides content delivery

---

[1] Plaintiff notes that Defendant Lyons was Edgio's Chief Executive officer ("CEO") and was a member of Edgio's Board of Directors throughout the entire Class Period, Defendant Boncel was Edgio's Chief Financial Officer ("CFO") throughout the Class Period until August 20, 2022, when he was replaced in this role by Defendant Cumming. (Doc. 32 at ¶¶ 17–19).

[2] Unless otherwise noted, these facts are taken from Plaintiff's FAC (Doc. 34). The Court will assume the FAC's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

network ("CDN") services, which are used to "deliver digital content over the internet," to major streaming companies such as Amazon Prime and Disney Plus. (*Id.* at ¶¶ 2–3). Defendant Robert Lyons was named as Edgio's CEO on January 20, 2021, after a period of declining sales. (*Id.* at ¶ 3).

Plaintiff alleges that Defendant Edgio materially misstated its revenue during the Class Period and that Edgio itself announced it would restate its financial statements for Fiscal Years 2021 and 2020 and its Quarterly Reports for 2022 because it had "improperly recognized revenue related to the Company's Open Edge solutions in violation of Generally Accepted Accounting Principles ("GAAP")." (*Id.* at 7). Plaintiff further alleges that Defendant Edgio's revenue was overstated by $6.204 million in FY 2020, $16.515 million in FY 2021, and $23.67 million in the nine months ending September 30, 2022. (*Id.*) Plaintiff states that these disclosures caused Edgio's stock to plummet 78% from $4.68 per share to $1.03. (*Id.* at ¶ 8). Due to these allegations, Plaintiff filed claims for (1) violation of §10(b) of the 1934 Act and Rule 10b-5 against all Defendants and (2) violation of §20(a) of the 1934 Act against the individual defendants. (*Id.* at ¶¶ 169–174).

Defendant Edgio Incorporated was dismissed from this matter after it filed a Suggestion of Bankruptcy (Doc. 40) because the automatic stay under 11 U.S.C. § 362(a) is in effect for Defendant Edgio (Doc. 51). *See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002) ("The plain language of § 362(a)(1) [of the Bankruptcy Code] prohibits the continuation of judicial actions."). The automatic bankruptcy stay does not automatically extend to the individual Defendants Robert Lyons, Daniel Boncel, and Stephen Cumming, however. *See e.g., In re Chugach Forest Prods., Inc*., 23 F.3d 241, 246 (9th Cir. 1994). In fact, the parties have stipulated that the Defendants' Motion to Dismiss is "ready for the Court's consideration." (Doc. 53 at 3). After this stipulation was filed, the Court Ordered the parties to re-file their original filings (Docs. 37–39) in connection with Defendants' Motion to Dismiss. (Doc. 54). The parties have done so, and Defendants' Motion to dismiss is indeed ripe for review. (Docs. 55–57).

/ / /

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) requires the Court to evaluate the legal sufficiency of a plaintiff's claims. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). This test requires that the plaintiff present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" with "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id*. at 557. The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. If the court dismisses a claim for failure to state a claim, it must then determine whether to grant leave to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

In addition, "claims brought under Rule 10b–5 and section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b)." *In re Daou Sys., Inc*., 411 F.3d 1006, 1014 (9th Cir. 2005); *see also* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud or mistake "state with particularity the circumstances constituting fraud or mistake"). Congress enacted further pleading requirements with the Private Securities

Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67 (1995), under which "any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u–4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u–4(b)(2)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

### III.   Discussion

To prevail on a claim of section 10(b) and Rule 10b–5 violations, a plaintiff must show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

Defendants argue that Plaintiff's Complaint fails to plead three of these elements: (1) scienter; (2) falsity; and (3) loss causation. (Doc. 37 at 12, 18 and 25). Plaintiff responds that he has adequately alleged these elements. (Doc. 38). The Court will address each argument in turn.

####   A.   Scienter

To sufficiently plead a violation of section 10(b) and Rule 10b–5, a plaintiff's allegations must create a strong inference that defendants acted intentionally or with deliberate recklessness. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009). This requires that the complaint, "state **with particularity** facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). In reviewing a securities fraud complaint during a motion to dismiss, a court asks "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.*, 551 U.S. at 310 (emphasis original). "A court

must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991 (citing *Tellabs, Inc.*, 552 U.S. at 323-34).

Defendants argue that Plaintiff has not plausibly alleged Defendant knew or was deliberately reckless in making the alleged misstatements. (Doc. 37 at 13). They argue that Plaintiff instead "relies on conclusory, boilerplate allegations that, when viewed either individually or holistically, are totally deficient." (*Id.*) Plaintiff claims that the accounts of its confidential witnesses, detailed in the Complaint, "demonstrate that Defendants intentionally or recklessly inflated Edgio's reported pipeline and exaggerated demand for and interest in Edgio's new edge computing and security products to mislead investors regarding the success of the Company's [Improve-Expand-Extend ("IEE")] Strategy." (Doc. 38 at 22).

Related to the element of scienter, the account of Plaintiff's first confidential witness creates a strong inference that defendants acted intentionally or with deliberate recklessness. Plaintiff's first confidential witness ("CW 1") accounts that they "worked as an Account Executive within Edgio's Enterprise Division for over a year, from November 2021 until December 2022[,]" and that Defendants engaged in "pipeline stuffing" which is where a business creates "a false pipeline to create a false sense of potential business the Company would derive." (Doc. 32 at ¶¶ 35-36). CW 1 states that this pipeline stuffing was being done so that Edgio would look stronger for investors and allow management to create a story that Edgio had a pipeline of business that did not exist. (*Id.* at ¶ 36). CW 1 also noted that these directives were given by their supervisor, Edgio's Vice President of Sales. (*Id.* at ¶ 35).

Indeed, as Defendant notes, in this Circuit a "complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements." *Zucco*, 552 F.3d at 995. "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their

- 5 -

reliability and personal knowledge. Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id*. (citations omitted). CW 1's statement meets this two-part test. First, their statement is described with sufficient particularity through facts of when they worked for Edgio, who they reported to, and most importantly, how the alleged pipeline stuffing occurred. (*See* Doc. 32 at ¶¶ 35–36). Second, CW 1's statements are indicative of scienter as they allege that Defendants were intentionally creating a pipeline of business that did not exist to look better to investors. (*Id*. at ¶ 35). So, the two-part test discussed in *Zucco* is met. The Court will allow Plaintiff to rely on CW 1's statements to support the scienter element. 552 F.3d at 995.

Plaintiff also spends multiple paragraphs in the Complaint detailing his allegations of scienter which do not rely on the CWs. (*See* Doc. 32 at ¶¶ 142–148). These allegations include:

- [T]he Individual Defendants were the most senior management of Edgio. The Individual Defendants, because of their positions in the Company, possessed the power and authority to control the contents of Edgio's filings with the SEC, press releases, and presentations to securities analysts, and the Company's disclosures to the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be materially false and misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. The Individual Defendants also personally made the materially false and misleading statements to the market as alleged herein. (Doc. 32 at ¶ 143).

- During the Class Period, the Individual Defendants acted intentionally or recklessly and participated in and orchestrated the fraudulent schemes alleged herein to conceal Edgio's true performance, growth prospects, financial statements, and financial condition. Such actions inflated Edgio's revenue and the Company's stock price. The Individual Defendants' scienter may be imputed to Edgio as the Individual Defendants were Edgio's most senior management and were acting within the scope of their employment. (*Id*. at ¶ 145).

- [T]he Individual Defendants knowingly and/or recklessly materially misstated Edgio's revenues . . . [and] filed false [Sarbanes-Oxley ("SOX")] Certifications with the SEC representing that they had designed and

- 6 -

- maintained effective internal controls over Edgio's financial reporting. (*Id*. at ¶ 146).

- during the Class Period, the Individual Defendants closely monitored Edgio's revenue and sales pipeline and, therefore, knew or were deliberately reckless in not knowing that the statements regarding such matters detailed herein were materially false and misleading. (*Id*. at ¶ 147).

- Defendants' material misstatements and omissions alleged herein related to Edgio's core business operations, including the progress and success of its IEE Strategy, which was vital to the Company's prospects. As Edgio's most senior executives, the Individual Defendants are presumed to have knowledge of these matters. (*Id*. at ¶ 148).

Drawing all reasonable inferences in Plaintiff's favor, as the Court must, the Court finds that Plaintiff's allegations, taken collectively, give rise to a strong inference of scienter. *See Tellabs, Inc*., 551 U.S. at 310. In fact, Plaintiff's allegations in paragraph 146, by themselves, demonstrate scienter as he alleges that "the Individual Defendants **knowingly** and/or **recklessly materially misstated** Edgio's revenues . . . [and] filed false SOX Certifications with the SEC representing that they had designed and maintained effective internal controls over Edgio's financial reporting. (*Id*. at ¶ 146). These particularly stated facts give rise to a strong inference that Defendants acted intentionally or with deliberate recklessness. 15 U.S.C. § 78u-4(b)(2)(A). Relying on these allegations as well as other allegations that Defendants "closely monitored Edgio's revenue and sales pipeline and, therefore, knew or were deliberately reckless in not knowing that the statements regarding such matters detailed herein were materially false and misleading" (Doc. 32 at ¶ 147) collectively give rise to a strong inference of scienter.

**B.     Falsity**

Defendants next argue that Plaintiff has failed to plausibly allege falsity and that "some" of the alleged misstatements are inactionable as a matter of law. (Doc. 37 at 19–23). Plaintiff argues that he has adequately alleged falsity. (Doc. 38 at 16). The Court agrees that Plaintiff has adequately alleged falsity.

A statement is "false or misleading if it 'directly contradict[s] what the defendant knew at that time' or 'omits material information.' " *Glazer Cap. Mgmt., L.P. v. Forescout*

*Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008–09 (9th Cir. 2018)). "In determining whether a statement is misleading, the court applies the objective standard of a 'reasonable investor.'" *Id*. (quoting *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021)). "When defendants 'tout positive information to the market,' they must 'do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.'" *Id.* (quoting *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705–06 (9th Cir. 2016)). "However, '[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)).

To properly allege falsity, "a securities fraud complaint must 'specify each statement alleged to have been misleading, [state] the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed." ` (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) (quoting 15 U.S.C. § 78u–4(b)(1)). "When a plaintiff relies on two statements which contain material differences as evidence of falsity, the plaintiff must plead specific facts explaining why the difference between the two statements 'is not merely the difference between two permissible judgments, but rather the result of a falsehood.'" *Id*. (quoting *In re GlenFed, Inc., Sec. Litig*., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc)). Alternatively, "when a plaintiff relies on an omission of fact as evidence of falsity, the plaintiff cannot simply show that the omission was material; instead, the plaintiff must show that the omission actually renders other statements misleading." *Id*. (citing Rigel, 697 F.3d 869, 880 n. 8).

Plaintiff relies on several alleged false and misleading statements. (Doc. 32 at ¶¶ 61–127). Plaintiff alleges that Defendants made materially false and misleading statements about: "(i) the effectiveness of Edgio's [internal controls over

- 8 -

financial reporting] ICFR; (ii) Edgio's revenue for FY 2021 and 2020 and the Quarterly Reports for 2022 and 2021; and (iii) the success of the IEE Strategy and the size, strength and/or purported growth of Edgio's sales pipeline." (*Id*. at ¶ 61).

Specifically, Plaintiff alleges that Edgio issued a press release on February 11, 2021, reporting the Company's FY 2020 results and "reported 'record' revenue of $230.2 million, 'a 15% increase from $200.6 million in 2019' " as well as "gross profit of $83.1 million, GAAP net loss of $19.27 million, and basic and diluted net loss per share of $(0.16) per share." (*Id*. at ¶ 62). Plaintiff states that these statements were false and misleading at the time they were made because Defendants later admitted that:

> (i) Edgio did not maintain sufficient internal controls over the financial reporting process to ensure that the Company's financial statements were free of material errors and were reported in compliance with GAAP;
> 
> (ii) The material weaknesses in Edgio's internal controls over financial reporting included deficiencies related to the design of controls to analyze, account for, and disclose complex transactions included in certain contractual arrangements, and a lack of sufficient technical accounting personnel to ensure they were accounted for in accordance with GAAP; and
> 
> (iii) Edgio's reported revenue and gross profit for FY 2020 were materially overstated and net loss and basic and diluted net loss per share were materially understated.

(*Id*. at ¶ 66). Plaintiff alleges statements that Edgio made about its 2021 financials suffer from the same deficiencies. (*Id*. at ¶¶ 67–71).

Plaintiff also alleges Edgio made various misstatements about their sales pipeline. Plaintiff specifically alleges that:

> (i) on August 24, 2021, Defendant Lyons told investors that Edgio had already experienced a 150% growth in [its] pipeline in the last 6 months;
> 
> (ii) on November 4, 2021, Edgio reported, and Lyons repeated on the earnings call, [s]trong pipeline growth with new logo bookings up more than 3x quarter over quarter, and in response to an analyst question, Boncel affirmed that Edgio's success in terms of new pipeline was driven by Layer0;
> 
> (iii) on April 28, 2022, Edgio announced, and Lyons repeated on the earnings call, that "[t]otal company pipeline ha[d] grown more than 30% from the beginning of the year, with Layer0 pipeline growing by triple digits;

> (iv) on August 8, 2022, Lyons stated that Edgio's pipeline "[was] already up 50% th[at] year; and
>
> (v) on November 9, 2022, Edgio reported that its [s]ales pipeline grew 75% from the beginning of the year.

(Doc. 32 at ¶¶ 77, 81–85, 99–101, 112 and 118). Plaintiff alleges that these statements about Edgio's sales pipeline, growth and strategy were false and misleading because its business "did not have momentum and its sales pipeline was inflated with opportunities that had little chance of becoming sales." (*Id.* at ¶ 97(iv)).

The Court finds that these allegations properly allege falsity. Plaintiff has alleged Edgio made numerous statements that were false or misleading and has explained why. For example, he alleges that Edgio's 2020 fiscal year reports were false and misleading when made because Defendants later admitted that "Edgio did not maintain sufficient internal controls over the financial reporting process to ensure that the Company's financial statements were free of material errors and were reported in compliance with GAAP" and because "Edgio's reported revenue and gross profit for FY 2020 were materially overstated and net loss and basic and diluted net loss per share were materially understated." (Doc. 32 at ¶ 66). Plaintiff specifically alleges that Defendants' "knowing or reckless failure to maintain effective internal controls over Edgio's financial reporting artificially inflated the Company's reported revenue during the impacted periods." (*Id.* at ¶ 140).

Furthermore, Plaintiff alleges that Edgio's statements on the health of its sales pipeline were false and misleading because they omitted key facts such as Edgio's sales pipeline being inflated with opportunities that had little chance of becoming sales. (*See e.g. id.* at ¶ 37 ("CW2 believed that the number of qualified opportunities was inflated because many of the opportunities that were qualified had little chance of becoming sales.")). These alleged omissions help Plaintiff plausibly allege that the omissions rendered other statements misleading; specifically, its statements about growth and the health of its sales pipeline. *See City of Roseville Employees' Ret. Sys.*, 963 F. Supp. 2d at 1108.

Defendants also attempt to rely on two exceptions to the element of falsity: the

PSLRA's safe harbor provision and the puffery exception. (Doc. 37 at 19–22). The Court will address each averred exception before moving on to the element of loss causation.

### 2. Safe Harbor

Under the PSLRA's "Safe Harbor" Provision, "forward-looking statements" are not actionable as a matter of law if they are identified as such and accompanied by "meaningful cautionary statements identifying important facts that could cause actual results to differ materially from those in the forward looking statement." *See* 15 U.S.C. § 78u–5(c)(1)(A)(i). A forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues." *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (citing 15 U.S.C. § 78u5 (i)).

Defendant argues that several of its alleged false or misleading statements fall under the safe harbor provision because they are forward looking. (Doc. 37 at 19). For example, Defendant argues Edgio's "intention to launch 'new security and developer solutions' and that it was 'expecting the upsell to be fairly quick in terms of its success' " is one such statement. (*Id.* (quoting Doc. 32 at ¶ 83)). While these specific statements may fall under the safe harbor provision, the statements Plaintiff specifically relies on to support the falsity element do not.

The above statements which the Court found demonstrate falsity are not forward looking. They are purported false statements of what has happened, such as Defendant Lyons's August 24, 2021, statement that Edgio had already experienced a 150% growth in its pipeline in the last 6 months. (Doc. 32 at ¶ 77). In sum, the PSLRA's safe harbor provision does not apply to the alleged false and misleading statements which support Plaintiff's falsity allegations. *See* 15 U.S.C. § 78u–5(c)(1)(A)(i).

### 3. Puffery

Defendant also argues that many of the alleged misstatements are "inactionable puffery." (Doc. 37 at 22). It argues that the Amended Complaint is "rife with 'vague

- 11 -

statements' of business puffery that 'are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.' " (*Id*. (quoting *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc*., 39 F.4th 1092, 1098–99 (9th Cir. 2022)).  It specifically argues that Edgio's statements regarding "momentum," "upside opportunities" and other similar statements quoted in the Amended Complaint are mere puffery. (*Id*. at 22–23).

Vague and optimistic statements made by corporate officials are not actionable because they can be characterized as puffery. *Lloyd v. CVB Fin. Corp*., 811 F.3d 1200, 1207 (9th Cir. 2016); *see also In re Cutera Sec. Litig*., 610 F.3d 1103, 1111 (9th Cir. 2010) (noting that a "mildly optimistic, subjective assessment" of a present state of affairs does not give rise to a securities violation). The "defining question is . . . whether the statement is so 'exaggerated' or 'vague' that no reasonable investor would rely on it when considering the total mix of available information." *Gammel v. Hewlett-Packard Co*., 905 F. Supp. 2d 1052, 1068 (C.D. Cal. 2012) (quoting *In re Impac Mortg. Holdings, Inc., Sec. Litig*., 554 F.Supp.2d 1083, 1096 (C.D. Cal. 2008)). "Generally, forward-looking or generalized statements of optimism that are not capable of objective verification constitute inactionable puffery." *Id*. (internal citations and quotations omitted).

The statements which Plaintiff alleges are false or materially misleading are not mere puffery. Puffing statements are generally not capable of objective verification. Some of the statements which Plaintiff alleges are false or misleading are statements about Edgio's financials; such as its reported revenue, gross profit, net loss and net loss per share. (Doc. 32 at ¶ 62). As Plaintiff points out (Doc. 38 at ¶ 21), these statements are capable of objective verification and are meaningful to investors, therefore, they do not constitute puffery. *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 606 (9th Cir. 2014) ("Statements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations."); (citing *SEC v. Todd*, 642 F.3d 1207, 1216–17 (9th Cir. 2011) (finding that a defendant's accounting calculation of the financial impact of a transaction was objective and a material misrepresentation)).

Moreover, Edgio's statements regarding the deliberate inflation of its sale pipeline are not mere puffery because Plaintiff alleges that this inflation occurred through "opportunities that had little chance of becoming sales." (Doc. 32 at ¶ 97(iv)). This alleged deliberate inflation, juxtaposed to other alleged false statements such as a "150% growth in [its sales] pipeline" in 2021, are not puffery either because they vague or optimistic statements—they are statements of fact. *See In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1027 (D. Ariz. 2017) ("[A] statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.") (quoting *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)). In sum, the puffery exception does not apply to these statements.

### C.  Loss Causation

Lastly, Defendants argue that Plaintiff has not plausibly alleged loss causation. (Doc. 37 at 19). Pleadings under Section 10(b) and Rule 10b–5 require that a plaintiff show "some causal connection between the fraud and the securities transaction in question." *In re Daou*, 411 F.3d at 1025 (citing *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999)). Loss causation is typically demonstrated with allegations that a defendant has admitted to a prior misstatement through a "corrective disclosure," which then causes the defendant company's stock price to drop. *Lloyd*, 811 F.3d at 1209 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014)). In analyzing loss causation, courts "begin with the premise that [the defendant's] misstatements *were* false and ask whether the market at some point learned of their falsity—through whatever means." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791–92 (9th Cir. 2020).

#### 1.  Fraud on the Market

Plaintiffs in securities fraud suits "must plead and ultimately prove that the defendant's wrongful conduct caused the plaintiff's injury." *Id.* at 789; *see also* 15 U.S.C. § 78u-4(b)(4) (codifying requirement to prove loss causation). "Typically, to establish loss

causation, a plaintiff must show that the defendants' alleged misstatements artificially inflated the price of stock and that, once the market learned of the deception, the value of the stock declined." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (citing *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119-20 (9th Cir. 2013)). This is known as the "fraud-on-the-market" theory. *Nuveen*, 730 F.3d at 1120. To advance this theory, "the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding*, 977 F.3d at 789 (citation and quotation omitted).

"The most common way for plaintiffs to prove that 'the truth became known' is to identify one or more corrective disclosures." *Id*. at 790 (citing *Mineworkers' Pension Scheme v. First Solar Inc*., 881 F.3d 750, 753-54 (9th Cir. 2018) (per curiam)). Corrective disclosures occur "when 'information correcting the misstatement or omission that is the basis for the action is disseminated to the market.' " *Id*. (quoting 15 U.S.C. § 78u-4(e)(1)). Corrective disclosures do not require "an admission of fraud by the defendant or a formal finding of fraud by a government agency." *Id*. (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1064 (9th Cir. 2008)). Rather, a corrective disclosure can "come from any source, including knowledgeable third parties such as whistleblowers, analysts, or investigative reporters." *Id*. (citation omitted). "Ultimately, the question is whether, based on the [complaint's] particularized allegations, the Court can 'plausibly infer that the alleged corrective disclosure provided new information to the market that was not yet reflected in the company's stock price[.]' " *In re Genius Brands Int'l, Inc. Sec. Litig*, 2025 WL 399522, at *6 (C.D. Cal. Feb. 4, 2025) (quoting *BofI Holding*, 977 F.3d at 794-95).

Defendants specifically argue that Plaintiff has failed to plead facts showing that several of their releases were corrective disclosures, "i.e., that they revealed the 'truth' of anything previously hidden." (Doc. 37 at 26). Plaintiff argues that he has adequately pled

loss causation through three press releases detailed in his Amended Complaint, (Doc. 38 at 27), which show corrected past misstatements in its April 28, 2022; November 9, 2022; and March 13, 2023, press releases. (Doc. 32 at ¶¶ 98, 118 and 131). Plaintiff states that "[b]efore market open on April 28, 2022, [Edgios] release report[ed] its financial results for Q1 2022 . . . For the second quarter in a row, the Company announced 'significant' year-over-year growth in revenue, gross margin, and adjusted EBITDA." (*Id.* at ¶ 98). Importantly, Edgio's April 2022 press release stated its revenue for the first quarter of 2022 was $58.0 million, up 13% year over year, and a growth of more than 30% in Edgio's pipeline from the beginning of the year. (*Id.* at ¶¶ 98–99). As for the November 2022 press release, Plaintiff states that it reported: "(i) Q3 2022 revenue of $121.2 million, up 119% year-over-year; (ii) GAAP gross margin of 30.5%, up 180 basis point year-over-year and 40 basis points quarter-over-quarter; (iii) record applications bookings with momentum continuing into Q4 2022; and (iv) pipeline growth of 75% since the beginning of the year, with the AppOps pipeline growing much faster." (*Id.* at ¶ 118). However, on March 13, 2023, Edgio announced that "it would restate its previously issued financial statements for FY 2021 and 2020 as well as the Quarterly Reports for 2022 and 2021 because the Company had improperly recognized revenue related to the Company's Open Edge solutions in violation of [GAAP]." (*Id.* at ¶ 7; 131).

Beginning with the allegation that Defendants' misstatements were false, *BofI Holding*, 977 F.3d at 791–92, the Court finds that Plaintiff has sufficiently alleged loss causation. Plaintiff has alleged that Defendant made several false statements to the public. (Doc. 32 at ¶¶ 61–127). These alleged false statements include information touting Edgio's revenue and profits, its sales pipeline, and the growth of this pipeline. (*See id.* at ¶¶ 77, 81–85, 99–101, 112 and 118). Importantly, Plaintiff further alleges that, on March 13, 2023, Edgio filed an 8-K form and announced that it would "restate its previously issued financial statements for the years ended December 31, 2021, and 2020, as well as Quarterly Reports for 2022 and 2021 related to the revenue recognition of its Open Edge solutions." (*Id.* at ¶ 131). The 8-K form further disclosed that

(i) the Company anticipated that FY 2020 revenue would be reduced by approximately $6.6 million, FY 2021 revenue would be reduced by approximately $16.7 million, and 1Q to 3Q 2022 revenue would be reduced by approximately $23.0 million, and (ii) Defendants expected to disclose a material weakness in the design and operation of effective internal controls over the accounting for the Open Edge arrangements.

(*Id.*)  Plaintiff finally alleges that, due to these corrective disclosures, "the price of Edgio's common stock declined 15.5% from the prior trading day's close of $1.03 to $0.87 at market close."  (*Id.* at ¶ 132).

Based on these particularized allegations, the Court can infer that the March 2023 corrective disclosure provided new information to the market that was not yet reflected in Edgio's stock price.  *See Genius Brands*, 2025 WL 399522, at *6.  For the two fiscal years prior to this corrective disclosure, Edgio reported record setting revenue and profits.  It also boasted of a more than thirty-percent growth to its sales pipeline for the first quarter of 2022—a metric which Plaintiff alleges, based on confidential witness statements, was artificially inflated.  (Doc. 32 at ¶ 6 ("the touted sales pipeline was inflated because it was filled with "opportunities" that were virtually certain not to translate into sales")).  Plaintiff has sufficiently alleged that (1) the truth of Edgio's fraud became known, and (2) the revelation of this fraud caused the artificial inflation in the stock's price to be reduced.  *See e.g.*, *In re BofI Holding*, 977 F.3d at 789.  So, he has plausibly alleged loss causation.

## IV.   Conclusion

As discussed above, Plaintiff has sufficiently alleged scienter; falsity, and loss causation.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 37) is **DENIED**.

Dated this 25th day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge