SCOTT+SCOTT ATTORNEYS AT LAW LLP
William C. Fredericks (*pro hac vice*)
Thomas L. Laughlin, IV (*pro hac vice*)
Karolina Klyuchnikova (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Cornelia Gordon (*pro hac vice*)
600 West Broadway, Suite 3300
San Diego, CA 92101

THE SCHALL LAW FIRM
Brian J. Schall
Brian R. England (AZ Bar No. 024888)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067

*On behalf of the Lead Plaintiff, Peter Frouws*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| PETER FROUWS, Individually And On Behalf Of All Others Individually Situated, Et Al., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT LYONS; DANIEL BONCEL; AND STEPHEN CUMMING, <br><br> Defendants. | No. 2:23-cv-00691-PHX-DJH <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. - 1 -

I.    BACKGROUND AND SETTLEMENT NEGOTIATIONS ............................ - 2 -

II.   ARGUMENT .................................................................................... - 5 -

    A.    The Court Should Preliminarily Approve the Proposed Settlement ....... - 5 -

    B.    The Court "Will Likely Be Able To" Approve the Proposed
        Settlement Under Rule 23(e)(2) ................................................. - 7 -

        1.    Lead Plaintiff and Co-Lead Counsel Have Adequately
            Represented the Class in This Action ........................................ - 7 -

        2.    The Settlement Was Reached Through Arm's-Length Negotiations
            Under the Auspices of a Highly Experienced Mediator .............. - 8 -

        3.    The Settlement Is Within the Range of Possible Approval ......... - 9 -

            a.    Litigation Risk.................................................. - 9 -

            b.    Ability to Pay ................................................. - 10 -

        4.    The Amount Recovered .......................................... - 11 -

        5.    Likely Duration and Complexity of The Litigation ................... - 11 -

        6.    The Experience and Views of Counsel ...................................... - 12 -

        7.    The Settlement Treats All Class Members Fairly...................... - 12 -

        8.    Lead Plaintiff Has Identified All Agreements Made
            Relating to the Settlement ........................................................ - 13 -

III.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
      AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS- 13 -

    A.    Retention of A.B. Data........................................................ - 13 -

    B.    Retention of Huntington National Bank ................................. - 14 -

    C.    Proposed Notice Procedures ................................................. - 14 -

        1.    The Form and Content of the Proposed Notice and
            Summary Notice Should be Approved ...................................... - 14 -

        2.    The Proposed Method of Disseminating Notice
            Satisfies Rule 23 and Due Process ........................................... - 15 -

IV.   CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT
      PURPOSES .................................................................................... - 17 -

    A.    Numerosity ......................................................................... - 18 -

B.  Common Questions of Law and Fact ..................................................... - 18 -

C.  Typicality ............................................................................................. - 19 -

D.  Adequacy .............................................................................................. - 19 -

E.  Predominance ....................................................................................... - 20 -

V.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................... - 21 -

VI.  CONCLUSION ............................................................................................. - 21 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 18, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................ 20

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ............................................................................ 17

*Borteanu v. Nikola Corp.*,
  348 F.R.D. 239 (D. Ariz. 2025) ....................................................................... 19

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ............................................................................ 6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .......................................................................... 6, 7

*Di Donato v. Insys Therapeutics, Inc.*,
  333 F.R.D. 427 (D. Ariz. 2019) .................................................................. 18, 19

*Farrar v. Workhorse Grp., Inc.*,
  2023 WL 5505981 (C.D. Cal. July 24, 2023) ................................................... 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................... 7, 17

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ............................................................................ 18

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................................. 13

*Horton v. USAA Cas. Ins. Co.*,
  266 F.R.D. 360 (D. Ariz. 2009) ......................................................................... 8

*Howard v. Web.com Grp. Inc.*,
  2020 WL 10223299 (D. Ariz. Sept. 18, 2020) ................................................ 16

*Huddlestun v. Harrison Glob., LLC*,
  2018 WL 3752368 (S.D. Cal. Aug. 7, 2018) .................................................... 7

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991)................................................................ 17

*In re Biolase, Inc. Sec. Litig.*,
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)........................................ 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................................... 7

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ............................................................. 17

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................... 6

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 9

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................... 13

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................. 8, 12

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 1991529 (N.D. Cal. June 30, 2007)......................................... 16

*In re RH, Inc. Sec. Litig.*,
    2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) .................................... 13, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.*
    *Litig.*,
    895 F.3d 597 (9th Cir. 2018) ...................................................................... 6

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......................................... 13

*Koch v. Desert States Emps. & UFCW Unions Pension Plan*,
    2021 WL 4318477 (D. Ariz. Sept. 23, 2021) ...................................... 8, 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .................................................................... 15

*Rodriguez v. QS Next Chapter LLC*,
    2020 WL 6882844 (D. Ariz. Nov. 18, 2020)........................................... 16

*Rodriguez v. W. Publ'g Corp.*,
      563 F.3d 948 (9th Cir. 2009) ..................................................... 12

*Sanchez v. Mohawk Indus., Inc.*,
      2025 WL 2694749 (E.D. Cal. Sept. 20, 2025) ............................... 12

*Siemer v. Assocs. First Cap. Corp.*,
      2001 WL 35948712 (D. Ariz. Mar. 30, 2001) ................................ 18

*Stromberg v. Qualcomm Inc.*,
      14 F. 4th 1059 (9th Cir. 2021) .................................................. 20

*Taafua v. Quantum Glob. Techs., LLC*,
      2021 WL 579862 (N.D. Cal. Feb. 16, 2021) ................................... 6

*Thomas v. MagnaChip Semiconductor Corp.*,
      2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
      564 U.S. 338 (2011) ................................................................ 18

*Wang v. Chinese Daily News, Inc.*,
      737 F.3d 538 (9th Cir. 2013) ..................................................... 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
      617 F.3d 1168 (9th Cir. 2010) ................................................... 17

**Statutes**

15 U.S.C. §78u-4(a)(7) .................................................... 14, 16

Securities Exchange Act of 1934 §10(b) ................................*passim*

Securities Exchange Act of 1934 §20(a) ........................................ 2

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................*passim*

Fed. R. Civ. P. 10 ............................................................... 2

Fed. R. Civ. P. 16 ............................................................... 5

*2024 Review & Analysis Securities Class Action Settlement*,
      CORNERSTONE RESEARCH, https://www.cornerstone.com/wp-
      content/uploads/2025/03/Securities-Class-Action-Settlements-2024-
      Review-and-Analysis.pdf.......................................................... 11

**PRELIMINARY STATEMENT**

Plaintiff Peter Frouws ("Lead Plaintiff") submits this brief in support of his Motion for Preliminary Approval of the proposed $15,000,000 settlement of this class action (the "Action"), pursuant to the Stipulation and Agreement of Settlement ("Stipulation," copy attached as Exhibit 1 to accompanying Declaration of Karolina Klyuchnikova ("Klyuchnikova Decl.")).[1]  The proposed Settlement, for the benefit of a class of investors (the "Settlement Class," as defined below) in the common stock of Edgio, Inc. (formerly Limelight Networks, Inc., and collectively "Edgio" or the "Company") was reached after arm's-length negotiations conducted under the auspices of a highly experienced mediator, and if approved, would settle all claims at issue in the Action.

More specifically, Lead Plaintiff respectfully requests that the Court enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Providing Notice ("Preliminary Approval Order"), which is also included as Exhibit A to the Stipulation and is being separately filed herewith.  Attached to the proposed Preliminary Order as Exhibits A-1, A-2, and A-3 are, respectively, the proposed: (1) Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice"), which is to be mailed to all Settlement Class members and nominees (*e.g.*, brokerage firms) who can be identified with reasonable effort; (2) Proof of Claim and Release form ("Proof of Claim"), to be mailed with the Notice to all Settlement Class Members and nominees; and (3) Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Summary Notice"), to be published once over *PR Newswire* (a national newswire service). Preliminary Approval Order ¶¶5, 6(d).

The Preliminary Approval Order would also approve the proposed notice plan ("Notice Plan") and the appointment of A.B. Data, Ltd. ("A.B. Data") as Claims

---

[1]    All capitalized terms not otherwise defined herein have the meanings given them in the Stipulation.

1    Administrator to disseminate the notices and administer the claims process, and

2    Huntington National Bank as Escrow Agent. *Id.* ¶¶4, 6-8. The Preliminary Approval

3    Order further provides Co-Lead Counsel with authority to pay all Taxes, Tax Expenses,

4    and Notice and Administration Expenses from the Settlement Fund as incurred. *Id.* ¶18.

5         The Motion also asks the Court to set a date for a final approval hearing

6    ("Settlement Hearing") to consider granting final approval of the proposed Settlement and

7    Plan of Allocation, to review the Fee and Expense Application, and to rule on any

8    objections and "opt-out" requests that may be received from Settlement Class Members.

9    *Id.* ¶2. The Preliminary Approval Order would also set customary deadlines for the

10   submission of "opt-out" requests, objections, and other submissions relating to final

11   approval and the Fee and Expense Application. *Id.* ¶¶12-14.

12        As further discussed below, the $15 million all cash Settlement represents an

13   excellent result for the Settlement Class that readily meets the "fair and reasonable"

14   standard for preliminary approval, particularly when weighed against the significant risks

15   of continued litigation and collectability issues arising out of Edgio's bankruptcy.

16   Moreover, the proposed Settlement was only reached after arm's-length negotiations

17   conducted under the auspices of a highly respected mediator, David Murphy, Esq. of

18   Phillips Alternative Dispute Resolution (the "Mediator"), and reflects both sides'

19   acceptance of the material terms of his independent "mediator's proposal."

20        Finally, the Motion also requests, pursuant to Federal Rules of Civil Procedures

21   23(a) and (b)(3), that the Court preliminarily certify the proposed Settlement Class for

22   settlement purposes only and appoint Lead Plaintiff (Peter Frouws) as class representative

23   and Scott+Scott Attorneys at Law LLP ("Scott+Scott") and The Schall Law Firm

24   ("Schall") (together, "Co-Lead Counsel") as class counsel for the Settlement Class.

25   **I.    BACKGROUND AND SETTLEMENT NEGOTIATIONS**

26        This action was commenced on April 25, 2023, by the filing of a complaint alleging

27   claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and

28   Rule 10b-5 thereunder against the now bankrupt Edgio and Defendants CEO Robert

Lyons, CFO Daniel Boncel, and CFO Stephen Cumming.  On June 26, 2023, Lead Plaintiff moved to be appointed lead plaintiff and to consolidate all related cases.  On November 3, 2023, the Court appointed Peter Frouws as Lead Plaintiff, consolidated all related actions into this Action, and appointed Scott+Scott and Schall as Co-Lead Counsel.  Doc. 23.

On January 29, 2024, Lead Plaintiff filed his amended complaint ("Amended Complaint").  Doc. 32.  In sum, Lead Plaintiff alleges that during the period from February 11, 2021 to March 12, 2023,[2] Edgio and Defendants made materially false and misleading statements and omissions concerning: (1) Edgio's performance, growth, and sales pipeline, and the success of its business strategy; (2) Edgio's internal financial controls; and (3) Edgio's revenue.  Lead Plaintiff contends that as a result of the alleged misrepresentations and omissions, Edgio's stock traded at artificially inflated prices during the Class Period, and that Settlement Class Members suffered damages when the truth was revealed and Edgio's stock price declined.  For their part, Defendants have consistently denied all allegations of liability or damages.

Defendants (including then-defendant Edgio) moved to dismiss the Amended Complaint on March 11, 2024, Doc. 37, and Lead Plaintiff filed comprehensive papers in opposition.  Doc. 38.  Thereafter, Edgio filed for bankruptcy under Chapter 11 in the District of Delaware (the "Bankruptcy Proceeding"), Doc. 41, thereby automatically staying these proceedings.  This Court thereafter dismissed Edgio from this Action.  Doc. 49.

On April 2, 2025, the remaining Defendants re-filed their motion to dismiss the Amended Complaint (Doc. 55).  In response, Lead Plaintiff again prepared and filed comprehensive papers in opposition (Doc. 56), and Defendants filed a reply (Doc. 57).

---

[2]    The Class Period for settlement purposes (February 12, 2021 to March 10, 2023) is slightly different, as it has been corrected to reflect that the first alleged misstatement was made after (rather than before) the close of the market on February 11, 2021, and that the last alleged corrective disclosure was made before the market opened on March 13, 2023.

1    Following this full briefing, on August 25, 2025, the Court issued its Order denying

2    Defendant's motion to dismiss in full.  Doc. 58.

3    Given the limited prospects for recovery against the now-bankrupt Edgio, and

4    given the likelihood that competing claims would be brought on behalf of Edgio's

5    creditors' committee that (together with the claims asserted in this Action) threatened to

6    rapidly waste away the limited insurance policies available to cover the universe of claims

7    to which Defendants were exposed, during the pendency of Defendants' second motion to

8    dismiss, the parties begun to discuss the possibility of trying to mediate the claims asserted

9    in this Action during the summer of 2025.  Accordingly, while the parties awaited the

10   Court's decision on the pending motion to dismiss, they also agreed to retain the highly

11   regarded David Murphy, Esq. as Mediator—a well-known retired securities litigator with

12   over 30 years of experience in securities class actions such as this—to explore mediation

13   options.  Klyuchnikova Decl. at ¶4.

14   Having recently retained the Mediator, the timing of the Court's issuance of its

15   August 25, 2025 Order (which denied Defendants' Motion to Dismiss) allowed the parties

16   to proceed to their initial mediation session on September 8, 2025, with the benefit of

17   having the Court's August ruling in hand.  In preparation for this initial mediation session,

18   both sides prepared and exchanged comprehensive mediation statements and related

19   submissions, including supplemental submissions addressing the import of this Court's

20   August 25, 2025 Order.  The face-to-face mediation session that followed on September

21   8, 2025, lasted a full day, and was personally supervised by and conducted with the active

22   involvement of the Mediator.  Nonetheless, despite these efforts, the parties were unable

23   to reach an agreement at the September 8, 2025 Mediation.  Klyuchnikova Decl. at ¶5.

24   Given the significant differences that still existed between the parties' respective

25   settlement positions, following the unsuccessful September 2025 mediation (and the

26   dissolution of the automatic PSLRA discovery stay by virtue of the Court's August 2025

27   Order), Lead Plaintiff and his counsel pursued a two-track approach of keeping open

28   potential settlement discussions using the Mediator while simultaneously pursuing active

1    litigation and discovery.   Klyuchnikova Decl. at ¶6.   Accordingly, Lead Plaintiff
2    negotiated the terms of a Joint Case Management Report with Defendants, which set forth
3    proposed litigation deadlines for this Action, which the parties submitted to the Court on
4    October 20, 2025 (Doc. 64), and which the Court substantially adopted in its Rule 16
5    Scheduling Order of October 22, 2025 (Doc. 65).  Both sides thereafter commenced fact
6    discovery, which included the preparation and service of interrogatories, document
7    requests, and third-party subpoenas.  Klyuchnikova Decl. at ¶6.

8         During the same period, the Mediator continued to explore and challenge both
9    sides' positions on liability, damages, and collectability.   As part of the Mediator's
10   process, in early December 2025, the Mediator made a "double-blind" mediator's proposal
11   to each side, proposing that all claims asserted in this Action be settled for $15 million, all
12   cash.  On December 9, 2025, the Mediator advised that both sides had agreed in principle
13   to accept his proposal, subject to the negotiation and preparation of the required "long
14   form" settlement documents.  Klyuchnikova Decl. at ¶7.  The Parties informed the Court
15   that they had reached this agreement-in-principle on December 11, 2025.  Doc. 78.

16        Over the course of the last two months, both sides engaged in further extensive
17   good faith negotiations and drafting efforts to prepare the required final documents,
18   consisting primarily of the Stipulation of Settlement and its accompanying exhibits.  The
19   Parties finalized and signed the Stipulation on February 11, 2026, and Lead Plaintiff filed
20   the Stipulation and the instant motion promptly thereafter.  Klyuchnikova Decl. at ¶8.

21   **II.    ARGUMENT**

22        The Settlement merits preliminary approval as it provides a significant $15 million
23   "bird in the hand" benefit for the Settlement Class, which is fair and reasonable in light of
24   the significant risks, costs, and uncertainties of continued litigation (particularly as
25   exacerbated by collectability issues arising out of former defendant Edgio's bankruptcy).

26        **A.    The Court Should Preliminarily Approve the Proposed Settlement**

27        Rule 23(e) requires judicial approval for any compromise or settlement of class-
28   action claims, and whether to grant such approval lies within the district court's sound

1    discretion.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.*

2    *Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).  In exercising this discretion, courts are guided

3    by the Ninth Circuit's "strong judicial policy that favors settlements, particularly where

4    complex class action litigation is concerned."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926

5    F.3d 539, 556 (9th Cir. 2019); *see also Taafua v. Quantum Glob. Techs., LLC*, 2021 WL

6    579862, at *3 (N.D. Cal. Feb. 16, 2021) ("The Ninth Circuit has declared that a strong

7    judicial policy favors settlement of Rule 23 class actions.").

8        Rule 23(e)(2) requires a district court to find that a proposed class action settlement

9    is "fair, reasonable, and adequate" before it can be approved, based on consideration of

10   whether:

11       a.    the class representatives and class counsel have adequately represented the
                class;

12   

13       b.    the proposal was negotiated at arm's length;

14       c.    the relief provided for the class is adequate, taking into account:

15            1.    the costs, risks, and delay of trial and appeal;

16            2.    the effectiveness of any proposed method of distributing relief to the
                    class, including the method of processing class-member claims;

17            3.    the terms of any proposed award of attorney's fees, including timing
18                  of payment; and

19            4.    any agreement required to be identified under Rule 23(e)(3); and

20       d.    the proposal treats class members equitably relative to each other.

21   Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106,

22   1120-21 (9th Cir. 2020).  Consistent with this guidance, the Ninth Circuit has identified

23   the following similar and/or overlapping "*Churchill* factors" for courts to consider in

24   evaluating proposed class action settlements, namely: (1) the strength of Plaintiff's case;

25   (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

26   maintaining class action status throughout the trial; (4) the amount offered in settlement;

27   (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

28   and views of counsel; (7) the presence of a governmental participant; and (8) the reaction

of the class members to the proposed settlement.[3] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). However, the Ninth Circuit has also noted that the review of class-action settlements should be "'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

A district court's review of a proposed class action settlement is a two-step process. First, it conducts a preliminary review of the proposed settlement to decide whether the class notice should be given notice of its terms. Fed. R. Civ. P. 23(e)(1). Second, after notice has issued and a hearing has been held, the Court decides whether to grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *see also Huddlestun v. Harrison Glob., LLC*, 2018 WL 3752368, at *2 (S.D. Cal. Aug. 7, 2018). A court grants preliminary approval to authorize notice (as requested here) upon finding that it "will likely be able" to finally approve the Settlement and certify the class. Fed. R. Civ. P. 23(e)(1)(B).

**B.    The Court "Will Likely Be Able To" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    Lead Plaintiff and Co-Lead Counsel Have Adequately Represented the Class in This Action**

In deciding whether to approve a settlement, the Court first considers whether Lead Plaintiff and his counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, Co-Lead Counsel conducted an extensive investigation in connection with filing their detailed Amended Complaint, including by collecting and analyzing large numbers of Edgio's SEC filings, press releases, and conference call transcripts; reviewing numerous analyst reports and news stories about the Company; and identifying, locating,

---

[3]    Lead Plaintiff does not believe that the risk of maintaining class action status here is significant and accordingly does not separately discuss this litigation risk below. The reaction of the Settlement Class is typically considered only at the later final approval stage, after all Class Members have been notified of the proposed Settlement.

and interviewing various former Edgio employees.  Co-Lead Counsel thereafter prepared and filed a comprehensive brief in opposition to Defendants' equally comprehensive motion to dismiss, with Lead Plaintiff and his counsel ultimately prevailing in full on all disputed issues (as reflected in this Court's August 2025 Order denying dismissal).  Co-Lead Counsel also thoroughly briefed the relevant facts and law in the context of preparing Lead Plaintiff's mediation submission and, as part of the mediation process, also carefully reviewed Defendants' submission on (and the Mediator's analysis of and comments on) liability, damages, and collectability issues.  As a result, Co-Lead Counsel were well-positioned to assess the strengths and weaknesses of the parties' claims and defenses before agreeing to the proposed Settlement.  Klyuchnikova Decl. at ¶9.

Co-Lead Counsel also respectfully submit that they have extensive experience in litigating securities class actions in this Circuit and across the country (*id.* ¶10), and that accordingly their belief that the Settlement is in the best interests of the Settlement Class also weighs in support of granting preliminary approval.  *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

### 2. The Settlement Was Reached Through Arm's-Length Negotiations Under the Auspices of a Highly Experienced Mediator

Courts must also consider whether the "proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  As described above, the Settlement here was achieved only after all counsel participated in a thorough, arm's-length mediation process conducted by a highly experienced mediator.  The Settlement, therefore, resulted from a procedurally fair process, including "serious, informed, non-collusive negotiations" by informed counsel under the supervision of the Mediator.  *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009); *see also Koch v. Desert States Emps. & UFCW Unions Pension Plan,* 2021 WL 4318477, at *7 (D. Ariz. Sept. 23, 2021) (granting preliminary approval where settlement was "arrived at after lengthy discussions with an experienced private

mediator").  Moreover, the Settlement itself is based on a mediator's proposal, which further confirms that it was not the product of collusion.  *See, e.g., Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *5 (C.D. Cal. July 24, 2023) (that settlement was based on mediator's proposal supported finding of arm's-length negotiations and absence of collusion).

### 3. The Settlement Is Within the Range of Possible Approval

Courts next consider if the settlement consideration is fair, reasonable, and adequate in light of the "costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C).  In short, courts balance the continuing risks of litigation against the amount, immediacy, and certainty of the proposed recovery under the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); Fed. R. Civ. P. 23(e)(2)(C).

The proposed Settlement provides for the creation of an immediate, all-cash $15 million settlement fund.  This result represents a meaningful recovery in a case involving substantial litigation risk and collectability concerns arising from Edgio's bankruptcy and the threat of competing creditor claims against a limited amount of available insurance coverage.  The alternative of continuing to pursue litigation here, therefore, raised a significant risk of recovering far less than $15 million, and possibly nothing at all.

### a. Litigation Risk

Under §10(b) of the 1934 Act, Lead Plaintiff faced significant risks on the merits in proving that Defendants made materially false or misleading statements.  The alleged misstatements here fell into three main categories: (1) statements about Edgio's allegedly inflated performance, growth, and sales pipeline, and the allegedly inflated success of its business strategy; (2) statements about Edgio's allegedly inadequate internal financial controls; and (3) statements about Edgio's allegedly inflated revenue.  However, Defendants argued that most statements at issue were immunized from liability because they were mere puffery or constituted inactionable forward-looking statements, and that the remaining statements at issue were neither false nor misleading.  While Lead Plaintiff prevailed on falsity issues at the motion to dismiss stage, such matters would have likely

1    been subject to review at summary judgment and trial in light of a more fully developed

2    factual record, and proof of falsity is rarely certain in securities litigation.  Further, a

3    number of the alleged misrepresentations were based on data reviewed by an outside

4    auditor, which invariably makes it harder to challenge the accuracy of related statements

5    before a jury.  Klyuchnikova Decl. at ¶15.

6          Further, although Lead Plaintiff believes he could have proven that Defendants

7    acted with scienter (*i.e.*, that they acted with the requisite intent to defraud), such proof is

8    never assured in §10(b) cases.  For example, while Co-lead Counsel had identified certain

9    witnesses who provided information indicating that Edgio knew that it was facing sales

10   pipeline issues, none of those witnesses had direct conversations with Defendants on that

11   subject, and there could be no assurance that a jury would find Lead Plaintiff's witnesses

12   more credible than Defendants' witnesses on such matters.  Defendants also argued that

13   although they monitored Edgio's revenue closely, that did not mean that they knew that

14   Edgio's revenue data was being recorded incorrectly.  Further, the fact that Defendants

15   did not engage in suspicious insider stock sales during the Class Period would have made

16   it difficult to prove motive to commit fraud.  Klyuchnikova Decl. at ¶16.

17         Moreover, although Lead Plaintiff survived the motion to dismiss, the evidentiary

18   burden at summary judgment and trial posed a significant risk, as Lead Plaintiff would

19   ultimately need to prove his claims based on the preponderance of the admissible

20   evidence.   And cases involving disputed accounting and internal control allegations

21   frequently come down to inherently unpredictable "battles of the experts."  In sum, this

22   case was no exception to the rule that §10(b) fraud cases involve very high risk.

23   Klyuchnikova Decl. at ¶17.

24                    **b.    Ability to Pay**

25         Issues with ability to pay and collectability also highlight the reasonableness of the

26   Settlement.  Here, assuming Lead Plaintiff's complete success in establishing Defendants'

27   liability,  Plaintiff's expert estimated that the *maximum* damages that could have

28   theoretically been recovered at trial were in the range of roughly $150 million.  However,

1  not only was Edgio's and Defendants' combined available insurance only a fraction of

2  that amount, but this limited coverage remains subject to certain related (but separate)

3  claims that appear likely to be brought for the benefit of Edgio's creditors in the aftermath

4  of Edgio's bankruptcy.  Accordingly, the risk that prolonged litigation of this Action

5  would significantly reduce available insurance coverage was doubly real here, as that

6  coverage was subject to being wasted by costs of litigation that Defendants would likely

7  have had to incur in both this case and in separate proceedings for the benefit of Edgio's

8  creditors.  Klyuchnikova Decl. at ¶18.

9              **4.    The Amount Recovered**

10             The $15 million Settlement also plainly compares favorably to other securities class

11  action settlements.  As a threshold matter, the $15 million recovery exceeds the median

12  for securities class action settlements ($10 million) in this circuit, based on data collected

13  between 2015 and 2024.  Laarni Bulan & Eric Tam, *Securities Class Action Settlements,*

14  *2024 Review & Analysis*, Cornerstone Research.[4]  Moreover, as noted above, Lead

15  Plaintiff's damages expert determined that the best-case scenario damages were roughly

16  $150 million, assuming the Class would run the table on all reasonably disputable liability,

17  loss causation, and damages issues.  Accordingly, the proposed $15 million recovery here

18  represents roughly 10% of the maximum reasonably recoverable damages.  By contrast,

19  the Cornerstone Research data shows that the average recovery in §10(b) cases in the

20  Ninth Circuit between 2015 and 2024 is 7.5% of recoverable losses.  *Id.*  The amount

21  recovered here, therefore, falls at the upper end of any "range of reasonableness," based

22  on comparison to published data.

23             **5.    Likely Duration and Complexity of The Litigation**

24             The likely duration and complexity of this litigation also favor settlement.  As

25  discussed above, although discovery had commenced here, absent settlement, there is little

26

27  [4]    *2024 Review & Analysis Securities Class Action Settlement*, CORNERSTONE RESEARCH,
       https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-
28     Settlements-2024-Review-and-Analysis.pdf (accessed February 10, 2026).

1    doubt that completion of discovery, the conduct of expert discovery, the briefing of

2    summary judgment, trial, and the inevitable post-trial motions and appeals would take

3    several more years.  Klyuchnikova Decl. at ¶19.  These factors also weigh strongly in

4    favor of the proposed Settlement.  *See Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 966

5    (9th Cir. 2009) ("risk, expense, complexity, and likely duration of litigation" support

6    settlement); *see also, Sanchez v. Mohawk Indus., Inc.,* 2025 WL 2694749, at *20 (E.D.

7    Cal. Sept. 20, 2025) (that "costs of future litigation [] may reduce the recovery to class

8    members" weighed in favor of final approval of settlement).

### 6.    The Experience and Views of Counsel

10    As noted above, the experienced Co-Lead Counsel for the proposed class believe

11    that the Settlement is in the best interests of the Settlement Class.  Klyuchnikova Decl. at

12    ¶10.  Accordingly, this factor also weighs in favor of preliminary approval.  *In re Pac.*

13    *Enters. Sec. Litig.*, 47 F.3d at 378.

### 7.    The Settlement Treats All Class Members Fairly

15    The Settlement also "treats class members equitably relative to each other."  Fed.

16    R. Civ P. 23(e)(2)(D).  More specifically, at the Settlement Hearing, the Court will be

17    asked to approve the proposed Plan of Allocation (the "POA") set forth in the Notice.  Co-

18    Lead Counsel developed the POA in consultation with Lead Plaintiff's damages expert.

19    Under the POA, each Class Member's recovery will be based upon the relative economic

20    losses they sustained as a result of Defendants' alleged misconduct.  Each eligible Class

21    Member who submits a valid Proof of Claim ("Claimant") will receive their *pro rata*

22    distribution from the Net Settlement Fund, based on a common formula applicable to all

23    Claimants that takes into account the estimated amount of inflation per share in Edgio

24    stock at the times that they purchased and sold (if they sold) their shares.  Each Claimant

25    will then receive a *pro rata* distribution of the Net Settlement Fund based on his, her, or

26    its Recognized Claim as a percentage of the total Recognized Claims of all Claimants.

27    Klyuchnikova Decl. at ¶20.

28

Such POAs, based on *pro rata* allocations to each class member under a common formula, are customary and ensure that each Claimant's recovery is based upon the relative losses they sustained, and that eligible Class Members will receive distributions calculated in the same manner, and are routinely held to be fair and reasonable. *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015); *In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *5, 20 (N.D. Cal. Oct. 25, 2019); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).[5] The proposed POA here is thus a fair and reasonable method for allocating the Net Settlement Fund.

### 8.    Lead Plaintiff Has Identified All Agreements Made Relating to the Settlement

In addition to the Stipulation, Lead Plaintiff notes that the Settling Parties have also entered into a customary, confidential "Supplemental Agreement" that gives Defendants the option to terminate the Proposed Settlement if the amount of liability represented by valid requests for exclusion exceeds an agreed "Exclusion Threshold." *See* Stip., ¶10.7. Such agreements have no negative impact on a settlement's fairness. *See, e.g.*, *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017), *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (same).

## III.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

### A.    Retention of A.B. Data

Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data, an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. Co-Lead Counsel selected A.B.

---

[5] If funds remaining after the initial distribution of the Net Settlement Fund to eligible Class Members are so small that a further re-distribution to Class Members would not be economically feasible, they will be donated to a non-profit §501(c)(3) entity approved by the Court. Stip. at ¶9.12.

Data after a competitive bidding process in which four firms submitted proposals. Klyuchnikova Decl. at ¶22.  Relatedly, Co-Lead Counsel seek the Court's authority to pay all Taxes, Tax Expenses, and Notice and Administration Expenses from the Settlement Fund as they are incurred.  Preliminary Approval Order ¶18.

### B.    Retention of Huntington National Bank

Lead Plaintiff proposes that the Court approve his selection of Huntington National Bank as escrow agent ("HNB").  HNB was established in 1866, holds over $200 billion in assets, and has more than 1,000 branches nationwide.  HNB's national settlement team has handled more than 7,800 settlements for law firms, claims administrators, and regulatory agencies.  Significantly, HNB has also agreed not to charge the Class any fees for investing Settlement Fund assets.  Klyuchnikova Decl. at ¶22.

### C.    Proposed Notice Procedures

#### 1.    The Form and Content of the Proposed Notice and Summary Notice Should be Approved

Lead Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Stip., Exs.  A-1, A-3.  The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have.

Consistent with Rule 23(e), the Notice apprises Class Members of the terms of the Settlement and the options available to them.  The Notice also satisfies the requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *see* 15 U.S.C. §78u-4(a)(7), in that it, among other things, states the amount of the Settlement; the maximum amount of attorneys' fees and litigation expenses that Co-Lead Counsel will seek; provides the contact information of Co-Lead Counsel who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.

### 2. The Proposed Method of Disseminating Notice Satisfies Rule 23 and Due Process

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement, voluntary dismissal, or compromise. Fed. R. Civ. P. 23(e)(1)(B). The notice "must generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, Defendants will provide A.B. Data with a list of shareholders of record of Edgio's Common Stock during the Class Period, for the purpose of identifying and giving notice to the Settlement Class. Preliminary Approval Order ¶6(a). The Claims Administrator will then mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) to all such identified potential Class Members, as well as post the Notice and the Claim Form on a website to be developed for the Settlement. *Id*. ¶6(b).

The Claims Administrator will also utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. These nominee purchasers will be required to either forward the Notice Packet to their customers or provide the names and addresses of the beneficial owners to A.B. Data, which will then promptly send the Notice Packet by first-class mail to such identified beneficial owners (or by email if provided). Preliminary Approval Order ¶8.

The Notice will advise Settlement Class Members of: (i) the pendency of the Action; (ii) the essential terms of the Settlement; and (iii) information regarding Co-Lead

1    Counsel's Fee and Expense Application.  The Notice also will provide specifics on the

2    date, time, and place of the Settlement Hearing and set forth the procedures for objecting

3    to the Settlement, the proposed POA, and/or the motion for attorneys' fees and expenses,

4    as well as the procedure for requesting exclusion from the Settlement Class.

5          In addition, the Summary Notice, which provides an abbreviated description of the

6    Action and the proposed Settlement and explains how to obtain the more detailed Notice,

7    will be transmitted over a national newswire service.  Preliminary Approval Order ¶6(d).

8          The form and manner of providing notice to the Settlement Class satisfy the

9    requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  The

10   Notice contains all of the specific information required by Rule 23(c)(2)(B) and the

11   PSLRA.  The manner of providing notice—which includes individual notice by mail to

12   all class members who can be reasonably identified, supplemented by additional

13   publication and internet notice—represents the best notice practicable under the

14   circumstances and satisfies the requirements of due process and Rule 23.

15         The proposed plan for providing notice is the same method used in numerous other

16   securities class actions.  Courts routinely find that comparable notice programs,

17   combining individual notice by mail to all class members who can reasonably be

18   identified, supplemented with publication notice, meet all the requirements of Rule 23 and

19   due process.  *See, e.g.*, *Howard v. Web.com Grp. Inc.*, 2020 WL 10223299 (D. Ariz. Sept.

20   18, 2020) (Humetewa, J.) (notice by mail is sufficient under the circumstances); *Koch v.*

21   *Desert States Emps. & UFCW Unions Pension Plan*, 2021 WL 4318477, at *9 (D. Ariz.

22   Sept. 23, 2021) (same); *Rodriguez v. QS Next Chapter LLC*, 2020 WL 6882844, at *8 (D.

23   Ariz. Nov. 18, 2020) (same); *In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *2 (N.D.

24   Cal. Oct. 25, 2019) (approving similar notice plan in securities class action); *In re Portal*

25   *Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding

26   that "notice by mail and publication is the 'best notice practicable under the

27   circumstances'").

28

1    Accordingly, Lead Plaintiff respectfully submits that the proposed Notice Plan be

2    approved.

3    **IV.    CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES**

4    At the Settlement Hearing, Lead Plaintiff will request final approval of the

5    Settlement on behalf of the Settlement Class.  Thus, it is appropriate for the Court to

6    consider, at the preliminary approval stage, and solely for the purpose of the Settlement,

7    whether class certification appears to be appropriate.  *Hanlon*, 150 F.3d at 1019.  In

8    determining whether to grant preliminary approval, the Court should determine whether

9    it "will likely be able to" grant certification to the proposed Settlement Class for purposes

10    of the Settlement at final approval.  Fed. R. Civ. P. 23(e)(1)(B).

11    Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii)

12    commonality; (iii) typicality; and (iv) adequacy of representation.  *Wolin v. Jaguar Land*

13    *Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the Court must find

14    that at least one of the three conditions of Rule 23(b) is satisfied.  *Id.*  Under subsection

15    (b)(3), the Court must find that the common questions of law or fact predominate over any

16    questions affecting only individual members, and that a class action is superior to other

17    available methods for the fair and efficient adjudication of the controversy.  *Id.*

18    This Action satisfies all the factors for certification of a 23(b)(3) class, and if the

19    Action were to proceed toward trial, class certification would be appropriate.  The Ninth

20    Circuit and numerous courts within have held that class actions are generally favored in

21    securities fraud actions.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir.

22    1975); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) ("[T]he

23    Ninth Circuit and courts in this district hold a liberal view of class actions in securities

24    litigation."); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009)

25    ("'Rule 23 is . . . liberally construed in a securities fraud context because class actions are

26    particularly effective in serving as private policing weapons against corporate

27    wrongdoing.'").  Further, the manageability concerns of Rule 23(b)(3) are not at issue for

28

a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As shown below, all applicable requirements of Rule 23(a) and Rule 23(b)(3) are met here.

### A.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, one need only show that it is difficult or inconvenient to join all members of the Class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). The "[n]umerosity requirement is generally assumed to have been met in class action suits involving nationally traded securities." *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 434 (D. Ariz. 2019) (internal citation omitted). Co-Lead Counsel estimate that more than 130 million shares were traded during the Class Period and that there were thousands of purchasers of Edgio common stock. Klyuchnikova Decl. at ¶24. Numerosity is thus met.

### B.    Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is satisfied where class members share at least one common question of law or fact. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). Generally, courts have liberally construed the commonality prerequisite, requiring only that "'the named plaintiffs share at least one question of fact or law with the grievances of the proposed class.'" *Siemer v. Assocs. First Cap. Corp.*, 2001 WL 35948712, at *14 (D. Ariz. Mar. 30, 2001). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). Rule 23(a)(2) is plainly satisfied here.

Here, the common questions of law and fact include whether: (i) Defendants' statements were false or misleading; (ii) the facts that Defendants misrepresented or omitted were material; (iii) Defendants acted with scienter, (iv) the price of Edgio's

Common Stock was artificially inflated by Defendants' misleading statements; (v) Defendants' misleading statement caused the Settlement Class's losses; (vi) Defendants were controlling persons of Edgio; and (vii) the Settlement Class suffered damages. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### C.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  That requirement is satisfied here.  Lead Plaintiff, like all other Settlement Class Members, purchased Edgio's Common Stock during the Class Period at allegedly inflated prices due to Defendants' alleged misstatements and was allegedly damaged when the concealed truth was revealed, causing the stock price to decline.  Amended Complaint ¶149.  The alleged injuries to Lead Plaintiff and the other members of the Settlement Class are thus attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories.  *See, e.g., Di Donato*, 333 F.R.D. at 435 (D. Ariz. 2019).

Lead Plaintiff's interest in obtaining a fair, reasonable, and adequate settlement is likewise identical to the interests of the other Settlement Class Members.  Under the proposed Plan of Allocation, Lead Plaintiff will receive a *pro rata* share of the Settlement Fund, along with all other Authorized Claimants.  The typicality requirement is, therefore, satisfied.

### D.    Adequacy

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts in the Ninth Circuit apply a two-prong Rule 23(a)(4) adequacy test: (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class.  *Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 252 (D. Ariz. 2025) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

Here, Lead Plaintiff has faithfully served the interests of the Class and has consulted with Co-Lead Counsel regarding the claims asserted, consistently made himself available whenever needed by counsel, and confirmed his willingness to continue to serve the Class as may be necessary or appropriate going forward.  Moreover, Co-Lead Counsel are unaware of any "fundamental conflicts" between the interests of the Lead Plaintiff and the interests of the Class, or any other impairments, that would disqualify him from serving as a fiduciary for the Class.  Lead Plaintiff and Settlement Class Members purchased Edgio shares during the Class Period, and were all injured by the same alleged false statements.  If Lead Plaintiff proves his claims at trial, he would also prove the Settlement Class's claims.  Klyuchnikova Decl. at ¶28; *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).  Thus, the interests of Lead Plaintiff and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants.

Co-Lead Counsel are well qualified to serve as class counsel based on their extensive experience in prosecuting securities class actions in general, as well as based on their representation to date of the Lead Plaintiff and the Settlement Class here. Klyuchnikova Decl. at ¶29.  Thus, the requirements of Rule 23(a)(4) are met.

### E.    Predominance

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The predominance inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Stromberg v. Qualcomm Inc.*, 14 F. 4th 1059, 1067 (9th Cir. 2021). Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages

1    suffered by members of the Settlement Class are not sufficient to make it economical to

2    prosecute separate actions to recover individual losses sustained as a result of Defendants'

3    alleged violations of the securities laws.  *See Amchem Prods.*, 521 U.S. at 617 ("The policy

4    at the very core of the class action mechanism is to overcome the problem that small

5    recoveries do not provide the incentive for any individual to bring a solo action . . . .  A

6    class action solves this problem . . . .").  Accordingly, a class action is superior to other

7    available methods for the fair and efficient adjudication of the controversy.

8        In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a)

9    and (b)(3) and is appropriate for certification for purposes of the Settlement.

10   **V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS**

11       Lead Plaintiff respectfully proposes the schedule for Settlement-related events as

12   set forth in Appendix A to this Memorandum.  If the Court agrees with the proposed

13   schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing at the

14   Court's earliest convenience.  If the Court grants preliminary approval as requested, the

15   only date the Court needs to schedule is the date of the final Settlement Hearing.  The

16   remaining dates will be determined by the date the Preliminary Approval Order is entered

17   and the date the Settlement Hearing is scheduled.

18   **VI.   CONCLUSION**

19       For the forgoing reasons, Plaintiff respectfully request that the Court

20   (i) preliminarily approve the proposed Settlement; (ii) preliminarily certify the Settlement

21   Class for purposes of settlement; (iii) approve the proposed form and manner of notice to

22   putative Settlement Class Members; (iv) appoint A.B. Data as the Claims Administrator

23   and HNB as the Escrow Agent and authorize Co-Lead Counsel to pay Taxes, Tax

24   Expenses, and Notice and Administration Expenses from the Settlement Fund as incurred;

25

26

27

28

1   and (v) schedule a date and time for the Settlement Hearing to consider final approval of

2   the Settlement and related matters.

3                                              Respectfully submitted,

4                                              SCOTT+SCOTT ATTORNEYS AT LAW LLP

5                                              By:  /s/ Karolina Klyuchnikova

6                                                   William C. Fredericks (*pro hac vice*)
                                                    Thomas L. Laughlin, IV (*pro hac vice*)

7                                                   Karolina Klyuchnikova (*pro hac vice*)

8                                                   The Helmsley Building
                                                    230 Park Avenue, 24th Floor

9                                                   New York, NY 10169
                                                    Telephone: (212) 223-6444

10                                                  Facsimile: (212) 223-6334

11                                                  wfredericks@scott-scott.com
                                                    tlaughlin@scott-scott.com

12                                                  kklyuchnikova@scott-scott.com

13                                                  SCOTT+SCOTT ATTORNEYS AT LAW LLP

14                                                  Cornelia Gordon (*pro hac vice*)
                                                    600 West Broadway, Suite 3300

15                                                  San Diego, CA 92101
                                                    Telephone: (619) 233-4565

16                                                  Facsimile: (619) 233-0508

17                                                  cgordon@scott-scott.com

18                                                  THE SCHALL LAW FIRM

19                                                  Brian J. Schall
                                                    Brian R. England (AZ Bar No. 024888)

20                                                  2049 Century Park East, Suite 2460
                                                    Los Angeles, CA 90067

21                                                  Telephone: (310) 301-3335

22                                                  Facsimile (310) 388-0192
                                                    brian@schallfirm.com

23                                                  briane@schallfirm.com

24                                                  *On behalf of the Lead Plaintiff, Peter Frouws*

25

26

27

28

1

**Appendix A**

2

**Proposed Schedule of Settlement Events**

3

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶6(b)) | No later than 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶6(d)) | No later than 10 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶15) | 46 calendar days after the Notice Date |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶12, 14) | 60 calendar days after the Notice Date |
| Deadline for filing reply papers (Preliminary Approval Order ¶15) | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | To be set by Court and inserted at ¶2 of Preliminary Approval Order |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶10(a)) | 90 calendar days after the Notice Date |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28